**POLACHEK LAW FIRM, P.C.**
BY:  RICHARD A. POLACHEK, ESQUIRE [PA I.D. No. 35283]
ATTORNEY FOR:   DEFENDANTS, EAST STROUDSBURG SCHOOL DISTRICT
                          AND ADAM GANGAWARE
PHOENIX PLAZA
22 EAST UNION STREET, SUITE 600
WILKES-BARRE, PA 18701-2723
(570) 822-8515      FAX (570) 822-5748

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DESTINY KING and | : | CIVIL ACTION NO. 3:17-cv-01764 |
| MEREDITH BEYERS, | : | (The Honorable Malachy E. Mannion) |
| PLAINTIFFS | : | |
| | : | CIVIL ACTION - LAW |
| V. | : | JURY TRIAL DEMANDED |
| EAST STROUDSBURG SCHOOL | : | |
| DISTRICT AND ADAM GANGAWARE, | : | |
| DEFENDANTS | : | *ELECTRONICALLY FILED* |

## PRETRIAL MEMORANDUM OF DEFENDANTS, EAST STROUDSBURG SCHOOL DISTRICT AND ADAM GANGAWARE

Defendants, East Stroudsburg School District and Adam Gangaware, by and through their counsel, Polachek Law Firm, P.C., by Richard A. Polachek, Esquire, hereby submits the following Pretrial Memorandum pursuant to Local Rule 16.6 of the Rules of Court of the United States District Court for the Middle District of Pennsylvania.

**DATE CONFERENCE WAS HELD BY COUNSEL:**          **JUNE 16, 2020**

**A.     A brief statement as to federal court jurisdiction:**

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343.

1

**B.    A summary statement of facts and contentions as to liability:**

On September 28, 2017, Plaintiffs, Destiny King and Meredith Beyers, filed a Complaint against Defendants, East Stroudsburg School District and Adam Gangaware, alleging excessive use of force and municipality liability.

Subsequent thereto, upon the filing of Defendants' Motion for Summary Judgment, the Plaintiffs agreed to withdraw their municipal liability claim against East Stroudsburg School District. As a consequence, the only matter pending before the Court at this time is Plaintiffs' §1983 claim against Adam Gangaware on the allegation of excessive use of force under the Fourteenth Amendment.

Briefly, at the time of the incident which gives rise to this matter which occurred on December 8, 2016, Adam Gangaware was employed as a school police officer with East Stroudsburg School District, and was employed in that capacity from July 16, 2012, through October 15, 2017, when he resigned to seek other opportunities. During his tenure with the School District and the school police unit there was never a situation that prompted any kind of reprimand, and during the time he was employed as a school police officer with the School District he received satisfactory annual evaluations.

On the morning of the incident of December 8, 2016, Meredith Beyers, the mother of Destiny King, who was a minor at that time, made multiple calls to 911 at the Monroe County Control Center ("MCCC") seeking police assistance because of the conduct of her daughter. The audio recordings as produced by the MCCC on two separate CDs contain the following colloquies:

| Call #1 | Call from Meredith Byers to 911 |
|---|---|
| 911 Operator: | Where is your emergency? |
| Meredith Beyers: | East Stroudsburg North.   My daughter is trying to beat...up... |
| | [CALL DISCONNECTS] |

| Call #2 | Call from Meredith Byers to 911 |
|---|---|
| 911 Operator: | 911. Where is your emergency? |
| Meredith Beyers: | East Stroudsburg North High School. |
| 911 Operator: | What is the problem? |
| Meredith Beyers: | My daughter just jumped out of a moving car. She's trying to beat me up. |

2

| | |
|---|---|
| 911 Operator: | Okay. What is your name? |
| Meredith Beyers: | Meredith [unintelligible]... |
| 911 Operator: | I will put you on with the State Police. Hold on one second. |
| | [CALL DISCONNECTS] |

---

**Call #3**  |  **Call from Monroe Control Center to PA State Police Blooming Grove Barracks**

| | |
|---|---|
| PA State Police: | Blooming Grove [unintelligible] |
| 911 Operator: | Hey. It's Monroe County. |
| PA State Police: | Okay. |
| 911 Operator: | I have a domestic for you. |
| PA State Police: | Okay. |
| 911 Operator: | It's going to be over the East Stroudsburg High School North campus. |
| PA State Police: | Okay. |
| 911 Operator: | Umm, I am not actually sure where on the campus it is but my caller said that her daughter jumped out of a moving car and is trying to beat her up and then she just disconnected on me. |
| PA State Police: | Okay. |
| 911 Operator: | I have a cell number for you though. |
| PA State Police: | Okay. |
| 911 Operator: | It's, uhh, 570-616-2577. |
| PA State Police: | 2577? |
| 911 Operator: | And... |
| PA State Police: | Any names involved? |
| 911 Operator: | No. I couldn't get any of that before she hung up on me. |
| PA State Police: | Okay. |
| 911 Operator: | Alright. |
| PA State Police: | Alright. Thank you. |
| 911 Operator: | Yep. Bye. |
| | [CALL ENDED] |

---

**Call #4**  |  **Call from Meredith Byers to 911**

| | |
|---|---|
| 911 Operator: | Where is your emergency? |
| Meredith Beyers: | East Stroudsburg Area North School. |

| 911 Operator: | Okay.  You need to stay on the phone so I could put you on with the State Police. Hold on a second. |
| Meredith Beyers: | My daughter keeps hanging up...<br>[CALL DISCONNECTS] |

| **Call #5** | **Call from Monroe Control Center to**<br>**PA State Police Blooming Grove Barracks** |
| PA State Police: | Blooming Grove [unintelligible] |
| 911 Operator: | Monroe, for East Stroudsburg North.  Go ahead m'aam. |
| Meredith Beyers: | I need somebody...<br>[CALL DISCONNECTS] |

Ms. Beyers confirms that on the morning of December 8, 2016, she did indeed call 911 seeking police assistance on account of her daughter's behavior.

Subsequent to Ms. Beyers' calls to 911 requesting police assistance Officer Gangaware was contacted via radio by the MCCC and notified of a domestic involving a female in a car somewhere on the East Stroudsburg High School North campus property.

At the request of the MCCC Officer Gangaware, in his capacity as a school police officer for the East Stroudsburg School District, proceeded to his marked police vehicle for the purpose of investigating the situation.  A true and correct copy of the Incident Report prepared by Officer Gangaware concerning his investigation of the incident is attached hereto, marked as Exhibit A, and incorporated herein by reference as if the same were set forth fully here at length.  True and correct copies of the Written Allegations and Affidavit of Probable Cause prepared by Officer Gangaware relative to the charges filed against Destiny King as a result of the incident December 8, 2016, are attached hereto, marked as Exhibit B, and incorporated herein by reference as if the same were set forth fully here at length.

As a result of the incident which occurred on December 8, 2016, Destiny King was charged with 2711 (domestic simple assault) in that Destiny King did strike her mother or victim several times in face and head with open and closed fist, causing wounds to Ms. Beyers' wrists including scratches, bruises, and punctures.  Destiny King was also charged with resisting arrest and, according to the Written Allegations, Ms. King resisted being arrested after being verbally informed that she was under arrest.  Ms. King continued to pull away from Officer Gangaware and break his grasp, as is referenced in Officer Gangaware's Incident Report, as

4

well as the Written Allegations and Affidavit of Probable Cause relative to the charges filed against Destiny King. (Exhibit B, Written Allegations and Affidavit of Probable Cause.)

On account of her conduct on December 8, 2016, Destiny King was placed on a Consent Decree for a period of six months on March 8, 2017. There was no further disposition or action taken in the juvenile delinquency case.

Meredith Beyers confirms as a result of the charges of December 8, 2016, Destiny King was placed on six months probation and also had to undergo psychiatric or some type of evaluation and serve ten hours of community service.

Destiny King further acknowledges that she was charged with simple assault and resisting arrest. She further confirms that she was placed on a Consent Decree for a period of six months on March 8, 2017, and that she was put on probation for six months and had to do ten hours of community service.

Returning back to the incident at hand, the ambulance took a long time, perhaps 30-45 minutes, to arrive at the scene. While waiting for the ambulance Ms. Beyers did not voice any complaints to Officer Gangaware about the way he had handled the situation. While waiting for the ambulance in the presence of Officer Fehrle, Ms. Beyers was trying to keep it light and she was also telling Destiny that she was in the wrong and that she should not have done this. In addition, while waiting for the ambulance, Ms. Beyers did not voice any complaints to either Officer Gangaware or Officer Fehrle about the way Officer Gangaware handled the situation.

Approximately two weeks after the incident of December 8, 2016, Principal Zall called Officer Gangaware to come down to the main office. When Officer Gangaware arrived in the main hallway Meredith Beyers and Destiny King were with Principal Zall. Principal Zall advised Officer Gangaware that both Meredith Beyers and Destiny King had something to say and that is when Destiny King apologized to Officer Gangaware for the incident, saying she was sorry that it had to happen and that the situation was not his fault, but rather was her fault, and this was said in the presence of Principal Zall. Ms. Beyers also expressed, "We're sorry that this happened" and that was the last time that Officer Gangaware spoke to either Ms. Beyers or Destiny King.

In addition, Chief Frederick Mill, Chief of the School District's police, testified that he did speak to Destiny and her mother after the incident when they came in a week or so after the incident. He indicated that they came in and apologized for what had occurred. He also indicated that at that time Destiny stated that it was completely her fault, that she should not

have done it and that she should have listened, and also stated she did not want any charges filed against her. He confirmed that Destiny did state that whole situation or whole incident was her fault. Neither Destiny nor her mother talked about specifics regarding the incident when they came in. As he indicated, Destiny just explained that it was her fault, that she should not have done what she did and she apologized and said she learned her lesson.

Officer Adam Gangaware specifically denies that he violated any constitutional rights of Destiny King and denies that he used excessive force under the circumstances.

**C.     A comprehensive statement of undisputed facts as agreed to by counsel at the conference of attorneys required by Local Rule 16.3. No facts should be denied unless opposing counsel expects to present contrary evidence or genuinely challenges the fact on credibility grounds. The parties must reach agreement on uncontested facts even though relevancy is disputed.**

1. At the time of the incident of December 8, 2016, Destiny King was a student at East Stroudsburg School District and was being driven to school by her mother, Meredith Beyers.

2. On the way to school on the morning of December 8, 2016, an argument ensued between Destiny King and Meredith Beyers and in light of her daughter's behavior Ms. Beyers made multiple calls to 911 at the Monroe County Control Center ("MCCC") requesting police assistance.

3. Officer Adam Gangaware, who was employed as a police officer for East Stroudsburg School District, responded to the 911 call upon being contacted via radio by the MCCC and notified of a domestic involving a female in a car somewhere on the East Stroudsburg High School North campus property.

4. As a result of the incident of December 8, 2016, Destiny King was charged with 2711 (domestic simple assault) in that Destiny King did strike her mother or victim several times in face and head with open and closed fist and causing wounds to Meredith Beyers' wrists including scratches, bruises, and punctures. Destiny King was also charged with resisting arrest, and according to the Written Allegations, Destiny King resisted being arrested after being verbally informed that she was under arrest, Destiny King continued to pull away from Officer Gangaware and break his grasp, as is referenced in Officer Gangaware's Incident Report, as well as the Written Allegations and Affidavit of Probable Cause relative to the charges filed against Destiny King.

5. On account of her conduct on December 8, 2016, Destiny King was placed on a Consent Decree for a period of six months on March 8, 2017. There was no further disposition or action taken in the juvenile delinquency case.

6. Meredith Beyers confirms as a result of the charges of December 8, 2016, Destiny King was placed on six months probation and also had to undergo psychiatric or some type of evaluation and serve ten hours of community service.

7. Destiny King further acknowledges that she was charged with simple assault and resisting arrest and further confirms that she was placed on a Consent Decree for a period of six months on March 8, 2017, and that she was put on probation for six months and had to do ten hours of community service.

8. Approximately two weeks after the incident of December 8, 2016, Principal Zall called Officer Gangaware to come down to the main office. When Officer Gangaware arrived in the main hallway Meredith Beyers and Destiny King were with Principal Zall. Principal Zall advised Officer Gangaware that both Meredith Beyers and Destiny King had something to say and that is when Destiny King apologized to Officer Gangaware for the incident, saying she was sorry that it had to happen and that the situation was not his fault, but rather was her fault, and this was said in the presence of Principal Zall. Ms. Beyers also expressed, "We're sorry that this happened" and that was the last time that Officer Gangaware spoke to either Ms. Beyers or Destiny King.

9. Chief Frederick Mill, Chief of the School District's police, testified that he did speak to Destiny and her mother after the incident when they came in a week or so after the incident. He indicated that they came in and apologized for what had occurred. He also indicated that at that time Destiny stated that it was completely her fault, that she should not have done it and that she should have listened, and also stated she did not want any charges filed against her. He confirmed that Destiny did state that whole situation or whole incident was her fault. Neither Destiny nor her mother talked about specifics regarding the incident when they came in. As he indicated, Destiny just explained that it was her fault, that she should not have done what she did and she apologized and said she learned her lesson.

D.    A brief description of damages, including, where applicable:

(1)    Principal injuries sustained:
(2)    Hospitalization and convalescence:
(3)    Present disability:

7

(4)   Special monetary damages, loss of past earnings, medical expenses, property damages, etc.:

(5)   Estimated value of pain and suffering:

(6)   Special damage claims:

See Plaintiffs' Pretrial Memorandum. By way of further response, the extent of Plaintiff, Destiny King's injuries are being disputed by defense medical expert, Peter A. Feinstein, M.D., and copies of Dr. Feinstein's reports dated August 1, 2018, and April 7, 2020, together with his Curriculum Vitae have been attached hereto and marked as Exhibit C.

E.   **Names and addresses of witnesses, along with the specialties and qualifications of experts to be called:**

1.   Defendant, Adam Gangaware

2.   Chief of Police Frederick Mill, East Stroudsburg School District Police Department, 50 Vine Street, East Stroudsburg, PA 18301.

3.   Dr. William Riker, Superintendent of East Stroudsburg School District, 50 Vine Street, East Stroudsburg, PA 18301.

4.   Officer Richard Fehrle, East Stroudsburg School District Police Department, 50 Vine Street, East Stroudsburg, PA 18301.

5.   Security Officer Victor Malvagno, East Stroudsburg School District, 50 Vine Street, East Stroudsburg, PA 18301.

6.   Sarah Wilson, Senior Deputy District Attorney of Monroe County (if necessary.)

7.   Custodian of records or representative of Monroe County Control Center (if necessary.)

8.   Custodian of records or representative of the Pennsylvania State Police (if necessary.)

9.   Plaintiff, Destiny King (as of cross-examination.)

10.   Plaintiff, Meredith Beyers (as of cross-examination.)

11.   Peter A. Feinstein, M.D., Medical Arts Center III, 2nd Floor, 150 Mundy Street Wilkes-Barre, PA 18702 (Defense Medical Expert)

12.   Joseph J. Stine, JJS Consulting Associates, Inc., 754 S. Settlers Circle, Warrington, PA 18976 (Defense Liability Expert)

*Defendants reserve the right to call any and all witnesses identified in Plaintiffs' Pretrial Memorandum, and further reserve the right to supplement this witness list prior to the time of Trial.*

F.   **Summary of testimony of each expert witness:**

1.   <u>**Defense Medical Expert, Peter A. Feinstein, M.D.**</u>

Dr. Feinstein, a board certified orthopaedic surgeon, had an occasion to evaluate Destiny King on August 1, 2018. After taking a history, reviewing the medical records including diagnostic studies, and performing a clinical examination Dr. Feinstein opined that as a result of the incident of December 8, 2016, Destiny King sustained a traumatic dislocation of her left hip with an acetabular avulsion or rim fracture, both of which completely healed.

At the time of his evaluation of Ms. King on August 1, 2018, her examination was entirely normal. Ms. King was fully functional and there were no residuals whatsoever found on exam. Even by history Ms. King related no residuals other than an occasional weather ache sensitivity which does not require any medical treatment.

In addition, Dr. Feinstein opined that Ms. King did not sustain a permanent loss of a bodily function and he would not restrict her in any way, work or otherwise. The doctor was also of the opinion that at the time of the exam Ms. King did not need any type of further treatment.

In addition, Dr. Feinstein opined that Ms. King would not develop osteoarthritis as a result of her injury and would not need hip replacement in the future.

Copies of Dr. Feinstein's report dated August 1, 2018, and April 7, 2020, together with his Curriculum Vitae have been attached hereto and marked as Exhibit C.

2.   <u>**Defense Liability Expert, Joseph J. Stine**</u>

Joseph J. Stine, former Police Chief of New Britain Township, Pennsylvania, and former Executive Officer of the Police Training Bureau for the City of Philadelphia, after reviewing all documents provided to him regarding the incident in question, is of the opinion that Officer Gangaware's progression through the use of force continuum that ended with Officer Gangaware pulling Ms. King out of the SUV was in accord with generally accepted practices and procedures for professional law enforcement officers under circumstances like those Ms. King caused on December 8, 2016.

Copies of Mr. Stine's report dated August 3, 2018, together with his Curriculum Vitae have been attached hereto and marked as Exhibit D.

G.    **Special comment about pleadings and discovery, including depositions and the exchange of medical reports:**

None at this time.

H.    **A summary of legal issues involved and legal authorities relied upon:**

To prevail in an action under Section 1983, plaintiff must demonstrate:

(1)    a violation of a right secured by the Constitution and laws of the United States; and

(2)    that the alleged deprivation was committed by a person acting under color of state law.

Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)

"The first step in evaluating a Section 1983 claim is to 'identify the exact contours of the underlying right said to have violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all'.") (*quoting* Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1988).)

To establish an excessive force claim under the Fourth Amendment "a plaintiff must show both that a seizure occurred and it was unreasonable." Lynn v. Schertzberg, 169 F. App'x 666, 669 (3d Cir. 2006) (*citing* Kopec v. Tatel, 361 F.3d 772, 776 (3d Cir. 2004).)

"To determine reasonableness, the court asks whether the officer's conduct was 'objectively reasonable' in light of the totality of the facts of the circumstances." Id. Factors to be considered include, but are not limited to, whether the suspect posed an immediate threat to the officers, whether the suspect was actively resisting arrest, and/or whether the suspect appeared to be violent. Id. (*citing* Graham v. Connor, 490 U.S. 386, 396 (1989); Scharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).)

The reasonableness of a particular incident of use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." Kopec v. Tatel, 361 F.3d 772, 777 (3d Cir. 2004) (*citing* Graham v. Connor, 490 U.S. at 396-97.)

The issue for the Jury here is whether Officer Gangaware's use of force was, in fact, objectively reasonable.

**I.      Stipulations desired:**

Authenticity of records including disposition of criminal charges filed against Destiny King, as well as authenticity of 911 call, as well as all medical records.

**J.      Estimated number of trial days:**

Four (4) to five (5) days.

**K.      Any other matter pertinent to the case to be tried:**

None at this time.

**L.      Pursuant to Local Rule 16.3 append to this memorandum a pre-numbered schedule of exhibits, with Brief identification of each, on the Clerks Exhibit Form:**

See attached List of Exhibits submitted on behalf of Defendants.

*Defendants reserve the right to utilize any and all exhibits identified in Plaintiffs' List of Exhibits, and further reserve the right to supplement this List of Exhibits prior to the time of Trial.*

**M.      Append any special verdict questions which counsel desires to submit:**

None at this time.  At this time Defendants defer any verdict questions to the Jury to be submitted by the Judge.   However, Defendants reserve the right to supplement prior to the time of Trial.

**N.      Defense counsel must file a statement that the person or committee with settlement authority has been notified of the requirements of and possible sanctions under Local Rule 16.2:**

Counsel for Defendants, East Stroudsburg School District and Adam Gangaware, hereby certifies that the person or committee with settlement authority on behalf of the Defendants has been notified of the requirements and possible sanctions under local Rule 16.2.

O.     Certificate must be filed as required under Local Rule 30.10 that counsel have met and reviewed depositions and videotapes in an effort to eliminate irrelevancies, side comments, resolved objections, and other matters not necessary for consideration by the trier of fact.

     The requisite certification will be filed by counsel after the Video Depositions for Use at Trial have been completed.

P.     In all trials without a jury, requests for findings of fact and law shall be submitted with this Memorandum as required by Local Rule 48.2:

     Not applicable.

                              POLACHEK LAW FIRM, P.C.
                              */s/ RICHARD A. POLACHEK, ESQUIRE*
                              RICHARD A. POLACHEK, ESQUIRE
                              Counsel for Defendants, East Stroudsburg
                              School District and Adam Gangaware
                              PA I.D. Number 35283
                              22 East Union Street, Suite 600
                              Wilkes-Barre, PA 18701-2723
                              (570) 822-8515; (570) 822-5748 [fax]
                              rpolachek@polachekclarklaw.com

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

# EXHIBIT A

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***



1

# East Stroudsburg Area School District Police Department Complaint / Incident Report

| ESASD Incident Code 0480 | ESASD Control Number 20170084 | Incident Description Domestic Assault | JNBT Yes ☐   Chief Yes ☐ |
|---|---|---|---|

| Date of Incident 12-08-2016 | Time of Incident 0713 | Location of Incident North School Dr. / Timberwolf Dr. | School or Bus Number |
|---|---|---|---|

**V C** Victim / Complainant / Victim

| Race White | Sex Female | Age 52 | D.O.B. 07-08-1974 |
|---|---|---|---|

| Last Name BBYBRS | First Name Meredith | MI A | Residence/Business Address 111 Brentwood Dr. | City/State/Zip Bushkill Pa 18324 |
|---|---|---|---|---|

| Residence Phone 570-616-2577 | Cell or other contact information: | Signature and Date of Person Reporting | Date |
|---|---|---|---|

Alcohol Related? Yes ☐  No ☐   Drug Related? Yes ☐  No ☐   Student? Yes ☐  No ☐   Staff? Yes ☐  No ☐   Other?

**I**

| Nature & Locations on Body of Injury Scrathes, Punctures    Both Forearms and Wrists | Officer Observed Yes ☐  No ☐ | Hospital | Doctor/Coroner |
|---|---|---|---|

| Name of Relative / Person Notified and Relationship | Phone | Notified by Whom | Condition of Injured |
|---|---|---|---|

**W PR** ☐

| Last Name | First | M.I. | Residence Address |
|---|---|---|---|

| Residence Phone | R/S | Age | D.O.B. | Place of Employment |
|---|---|---|---|---|

Property Damage?  Yes ☐  No ☐   Stolen?  Yes ☐  No ☐   Significant M.O.?  Yes ☐  No ☐

**P**

| Type Property   Auto Theft ☐ | Serial Number | Total Value |
|---|---|---|
| Type Property   Bicycle Theft ☐ | Serial Number | Total Value |
| Type Property | Serial Number | Total Value |

Subjects: Describe Each Subject Using Age, Race, Height, Weight, Any Identifying Scars, Marks & Clothing

**S W**

| 1. Name: Suspect Destiny Courage KING | 2. Name: | 3. Name: |
|---|---|---|
| Address: 111 Brentwood Dr.   Bushkill PA 18324 | Address: | Address: |
| 570-616-2577  12-22-1999 | | |

| Arrested  Yes ☐  No ☐  Can Be Identified Yes ☐  No ☐ | Arrested  Yes ☐  No ☐  Can Be Identified Yes ☐  No ☐ | Arrested  Yes ☐  No ☐  Can Be Identified Yes ☐  No ☐ |
|---|---|---|

Deadly Weapon Used or Exhibited? Yes ☐  No ☐   Implied? Yes ☐  No ☐   Located? Yes ☐  No ☐

**DW**

| Type | Description | How Used |
|---|---|---|

Vehicle Description?  Suspect ☐  Victim ☐   Stolen?  Yes ☐  No ☐   Located?  Yes ☐  No ☐

**A**

| Year | Make | Model | Color | Reg# | State |
|---|---|---|---|---|---|

| Vehicle Registered Owner   ( Name, and Address) | V.I.N. |
|---|---|

| Insurance Company | NAIC # | Policy # | Distinctive Features |
|---|---|---|---|

Weather Conditions
Sunny ☐  Rain ☐  Snow ☐  Ice ☐  Fog ☐  Other

Road Conditions
Sunny ☐  Rain ☐  Snow ☐  Ice ☐  Fog ☐  Other

| Assisting Officers / Agencies | Case Status: Open ☐  Arrest ☐  Non-Arrest ☐  Exceptional ☐  Incident ☐  Incident Supplement ☐ |
|---|---|

| Reporting Officer: Gangaware | Badge # J-8 | Supervisor Approval: | Badge # | Investigator: | Badge # |
|---|---|---|---|---|---|

East Stroudsburg Area School District Police Department Complaint / Incident Report

On December 8th 2016, I, Officer Gangaware, was contacted via Radio by MCCC of a Domestic involving a female somewhere in a car with in the ESASD North Campus Property. I was also informed by a Security Officer, Malvango, that he had seen an unknown person wearing a gray hoodie sweatshirt walking towards intersection of Timberwolf Dr. and Bushkill Falls Rd. He then observed a Red SUV follow the person. Moments later he observed the same Red SUV parked at the corner of Timberwolf Dr. and the Lehman Intermediate Bus Loading Area. He observed the person dressed in the gray hoodie trying to exit the vehicle and then the vehicle began driving towards the rear of the building on Timberwolf Dr. I the responded in a marked patrol car to that area and was able to see a vehicle with its yellow emergency flashers on parked at the corner of Timberwolf Dr. and N School Dr. I arrived at that location and observed a person matching the description given by the Security Officer walking towards Bushkill Elementary on N School Dr. I made contact with the female driver of the Red SUV. She stepped out of her Vehicle and was very upset. She Identified herself as the mother of the other individual that was walking away wearing the Gray Hoodie. The Driver was identified as Meredith BEYERS and her daughter Destiny KING has just hit her and injured her arms. BEYERS then showed her wrists that were bleeding and had fresh scratches and what looked like deep wounds commonly associated with nail pinches/scrapes. I then proceeded, in my Marked Patrol Car and positioned myself just in front of KING. As I exited my vehicle, KING began running towards the Red SUV which had followed me to my current location, about 500 feet from the N School Dr. and Timberwolf Dr. intersection. KING then was able to enter the vehicle's front passenger side and locked the door. BEYERS was still in the vehicle, BEYERS then turned off the vehicle and proceeded to try and unlock the doors. KING then began striking BEYERS and screaming at her to drive her home. BEYERS attempted to defend herself. I then was able to open the rear passenger door and restrain KING's Rt. Arm while BEYERS reached across and attempted to open the front passenger door. After several more strikes from KING to BEYERS face and neck, BEYERS was able to open the Front passenger door. Fearing for the well being of BEYERS, I immediately released KING's arm and moved to her side next to the front passenger side. KING began to resist my instructions to exit the vehicle and stop striking BEYERS. KING did not comply. I then was able to remove KING from the front passenger seat by restraining her right arm and pulling. KING began to resist

3

East Stroudsburg Area School District Police Department Complaint / Incident Report

by shaking and pulling away from my grasp. I announced she was under arrest and to stop resisting. While

removing KING from the vehicle KING continued to pull away and break my grasp. Both KING and myself lost

our footing on the snow covered grass and fell to the ground. I placed KING in handcuffs and assisted her into a

sitting position. KING complained of severe left thigh pain and I requested an EMS unit from MCCC. I also

requested a second Juliet Unit to respond. Officer Fehrle responded and arrived a short time later. I did remove

King's handcuffs to allow her to position herself to reduce the pain in her Left Thigh. I informed KING she was

under arrest for Domestic Violence against her mother and resisting arrest.

I then made contact with MCCC and advised of the arrest and EMS arrival.

I contacted Pike County Probation Officer Polish about the incident and he advised to release the Juvenile to

BEYERS since she was now not in fear of KING and both were calm.

I informed BEYERS of this conversation and released KING to her.

KING was then transported to Pocono Medical Center via Hemlock Farms EMS.

Officer's Signature:

12-8-16

Date:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT B

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF:    Pike

**WRITTEN ALLEGATION**
(Single Summary of Offenses)
In the Interest of:

*Affiant Information*
Affiant Name    Officer Adam Gangaware
Arresting Agency    East Stroudsburg Area School District
Address    50 Vine St

City/State/ZIP    East Stroudsburg PA 18301
Telephone    (570) 424-8500

| County: Pike |
| First Name: |
| Brentwood Dr. |
| City/State/ZIP: Bushkill PA 18324 |
| Telephone: (570) 618-2577 |

### JUVENILE IDENTIFICATION INFORMATION

| Docket Number | Date Filed | OTN / LiveScan Number | Allegation Number | SID | Request Lab Services? |
|---|---|---|---|---|---|
| | | | 110521 | | ☐ YES ☑ NO |

| Gender | DOB 12/22/1999 | Place of Birth East Stroudsburg, PA | A/K/A DOB | Complexion? |
|---|---|---|---|---|
| ☐ Male | | | | |
| ☑ Female | AKA | | | |

| | First Name | | Middle Name | Last Name | Gen. |

| Race | ☑ White | ☐ Asian | ☐ Black | ☐ Native American/Alaskan Native | ☐ Native Hawaiian/ Pacific Islander | ☐ Unknown |
| Ethnicity | ☐ Hispanic | ☑ Non-Hispanic | ☐ Unknown | | | |

| Hair Color | ☐ GRY (Gray) | ☐ RED (Red/Aubn.) | ☐ SDY (Sandy) | ☐ BLU (Blue) | ☐ PLE (Purple) | ☑ BRO (Brown) | ☐ PNK (Pink) |
| | ☐ BLK (Black) | ☐ ONG (Orange) | ☐ WHI (White) | ☐ XXX (Unk/Bald) | ☐ GRN (Green) | ☐ BLN (Blonde / Strawberry) | |

| Eye Color | ☐ BLK (Black) | ☐ BLU (Blue) | ☑ BRO (Brown) | ☐ GRN (Green) | ☐ GRY (Gray) |
| | ☐ HAZ (Hazel) | ☐ MAR (Maroon) | ☐ PNK (Pink) | ☐ MUL (Multicolored) | ☐ XXX (Unknown) |

| Drivers License | State | License Number | Exp (res) | Weight (lbs.) |
|---|---|---|---|---|
| DNA? ☐ YES ☑ NO | DNA Location | | | 210 |
| FBI Number | | NRU Number | | Height (ft. in.) |
| Juvenile Fingerprinted? ☐ YES ☑ NO | Fingerprint Classification | | | 5   7 |
| Juvenile Photographed? ☐ YES ☑ NO | | | | |

### PARENT / GUARDIAN INFORMATION

| Mother | | Father | |
|---|---|---|---|
| Name Meredith A. Bayers | | Name | |
| Address 111 Brentwood Dr. | | Address | |
| City/State/ZIP Bushkill PA 18324 | | City/State/ZIP | |
| Phone (570) 618-2577 | DOB 07/29/1974 | Phone | DOB |
| ☐ Deceased ☐ Address Unknown ☑ Same Address as Juvenile | | ☐ Deceased ☐ Address Unknown ☐ Same Address as Juvenile | |

| Guardian or Nearest Adult Relative (if parent/guardian are unknown) | |
|---|---|
| Name | Name |
| Address | Relationship to Juvenile: |
| City/State/ZIP | Phone | DOB |
| | ☐ Deceased ☐ Address Unknown ☐ Same Address as Juvenile |

### ARREST & DETENTION

| Date of Arrest 12/08/2016 | Date & Time Admitted to Detention |
| Time of Arrest 8:15 am | Location of Detention Facility |

### APPROVAL OF THE ATTORNEY FOR THE COMMONWEALTH

Office of the Attorney for the Commonwealth:   ☐ Approved   ☐ Disapproved because:
(The District Attorney may require that the written allegation be approved by an attorney for the Commonwealth prior to submission. See Pa.R.J.C.P. 231).

Name of Attorney for the Commonwealth    Signature of Attorney for the Commonwealth    Date

I,   Officer Adam Gangaware
   (Name of the Affiant)    SD450012   J-8
of   East Stroudsburg Area School District Police Department    (PSP/MPOETC-Assigned Affiant ID Number & Badge #)
   (Department or Agency Represented & Political Subdivision)    PA0451600
   (Police Agency ORI Number)

1. Do hereby represent that it is in the best interest of the juvenile and the public that proceedings be brought, and that the juvenile is in need of treatment, supervision or rehabilitation.

☑   I allege that the above named Juvenile who lives at the address set forth above
☐   I allege that the Juvenile whose name is unknown to me but who is described as: _____
☐   I allege that the Juvenile whose name and popular designation are unknown to me and whom I have therefore designated as John Doe or Jane Doe

has committed a delinquent act by violating the penal laws of the Commonwealth of Pennsylvania at

  (206)    East Stroudsburg North Campus    in   Pike    County
(Subdiv. Code)   (Place – Political Subdivision)

on or about   Thursday, December 8th 2016, at 0713hrs
         (Day, Date and Time)

## WRITTEN ALLEGATION

| Docket Number: | Date Filed: | OTN/LiveScan Number | Allegation Number |
|---|---|---|---|
| | | | 119621 |

| Juvenile Name: | First: Destiny | Middle: Courage | Last: King |
|---|---|---|---|

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 |
|---|---|---|---|

| Lead? | Offense# | Section | Subsection | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|
| ☑ | 1 | 2701 | (a)(1) | 18 | 1 | M2 | | |

| PennDOT Data (if applicable) | Accident Number | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|

Statute Description (include the name of statute or ordinance):
(2701)(Domestic) Simple Assault - Destiny KING did strike her Mother the Victim several times in face and head with open and closed fists and causing wounds to BEYERS' wrist including scratches bruises and punctures.

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 |
|---|---|---|---|

| Lead? | Offense# | Section | Subsection | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|
| ☐ | 2 | 5104 | | 18 | 1 | M2 | | |

| PennDOT Data (if applicable) | Accident Number | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|

Statute Description (include the name of statute or ordinance):
Resisting Arrest - Destiny KING resisted being arrested after being verbally informed that she was under arrest. KING continued to pull away from officer and break the officer's grasp.

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 |
|---|---|---|---|

| Lead? | Offense# | Section | Subsection | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|
| ☐ | | | | | | | | |

| PennDOT Data (if applicable) | Accident Number | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|

Statute Description (include the name of statute or ordinance):



Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offenses charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. The age of the victim at the time of the offense may be included if known. In addition, social security numbers and financial information (e.g. PINs) should not be listed. If the identity of an account must be established, list only the last four digits. 204 PA.Code §§ 213.1 – 213.7.

Acts of the Accused:

The morning of December 8th 2016, Destiny KING was witnessed by Officer Gangaware, Assaulting, her mother, Meredith BEYERS inside a vehicle.

Destiny KING did strike BEYERS with an open and closed fist, several times to BEYERS' head and face resulting in a scratch to BEYERS' face. KING also caused injuries to BEYERS' wrists that included bleeding from fresh scratches and what looked like deep wounds commonly associated with nail pinches/scraps/punctures

Destiny KING resisted arrest by continuing to pull away from and break the officer's grasp after being verbally informed that she was under arrest.

# WRITTEN ALLEGATION

| Docket Number: | Date Filed: | OTN/LiveScan Number | Allegation Number: 119821 |
|---|---|---|---|
| Juvenile Name: First: Destiny | | Middle: Courage | Last: King |

2. ☐ I ask that a warrant of arrest be issued for the above named Juvenile. (An affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.)

   ☐ I ask that the Juvenile be brought before the Court to answer the charges I have made.

3. ☐ I verify that the facts set forth in this allegation are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa.C.S. § 4904) relating to unsworn falsification to authorities.

4. ☐ This allegation consists of the preceding page(s) numbered 1 through 2.

The acts committed by the Juvenile, as listed and hereafter, were against the peace and dignity of the Commonwealth of Pennsylvania and were contrary to the Act(s) of the Assembly, or in violation of the statutes or ordinances of political subdivisions cited.

Officer Adam Gangaware

(Name & Title of the Affiant)     (Affiant's Signature)     12-08-2016

(Date)

WRITTEN ALLEGATION

| Docket Number: | Date Filed: | OTN/LiveScan Number | Allegation Number 119821 |
| --- | --- | --- | --- |
| Juvenile Name: | First: Destiny | Middle: Courage | Last: King |

## AFFIDAVIT of PROBABLE CAUSE

On December 8th 2016, I, Officer Gangaware, was contacted via Radio by MCCC of a Domestic involving a female somewhere in a car with in the ESASD North Campus Property. I was also informed by a Security Officer, Melvango, that he had seen an unknown person wearing a gray hoodie sweatshirt walking towards intersection of Timberwolf Dr. and Bushkill Falls Rd. He then observed a Red SUV follow the person. Moments later he observed the same Red SUV parked at the corner of Timberwolf Dr. and the Lehman Intermediate Bus Loading Area. He observed the person dressed in the gray hoodie trying to exit the vehicle and then the vehicle began driving towards the rear of the building on Timberwolf Dr. I the responded in a marked patrol car to that area and was able to see a vehicle with its yellow emergency flashers on parked at the corner of Timberwolf Dr. and N School Dr. I arrived at that location and observed a person matching the description given by the Security Officer walking towards Bushkill Elementary on N School Dr. I made contact with the female driver of the Red SUV. She stepped out of her Vehicle and was very upset. She identified herself as the mother of the other individual that was walking away wearing the Gray Hoodie. The Driver was identified as Meredith BEYERS and her daughter Destiny KING has just hit her and injured her arms. BEYERS then showed her wrists that were bleeding and had fresh scratches and what looked like deep wounds commonly associated with nail pinches/scraps. I then proceeded. In my Marked Patrol Car with lights and sirens activated, to just in front of KING. As I exited my vehicle, KING began running towards the Red SUV which had followed me to my current location, about 500 feet from the N School Dr. and Timberwolf Dr. Intersection. KING then was able to enter the vehicle's front passenger side and locked the door. BEYERS was still in the vehicle, BEYERS then turned off the vehicle and proceeded to try and unlock the doors. KING then began striking BEYERS and screaming at her to drive her home. BEYERS attempted to defend herself. I then was able to open the rear passenger door and restrain KING's Rt. Arm while BEYERS reached across and attempted to open the front passenger door. After several more strikes from KING to BEYERS face and neck, BEYERS was able to open the Front passenger door. Fearing for the well being of BEYERS, I immediately released KING's arm and moved to her side next to the front passenger side. KING began to resist my instructions to exit the vehicle and stop striking BEYERS. KING did not comply. I then was able to remove KING from the front passenger seat by restraining her right arm and pulling. KING began to resist by shaking and pulling away from my grasp. I announced she was under arrest and to stop resisting. While removing KING from the vehicle KING continued to pull away and break my grasp. Both KING and myself lost our footing on the snow covered grass and fell to the ground. I placed KING in handcuffs and assisted her into a sitting position. KING complained of severe left thigh pain and I requested an EMS unit from MCCC. I also requested a second Juliet Unit to respond. Officer Fehle responded and arrived a short time later. I did remove King's handcuffs to allow her to position herself to reduce the pain in her Left Thigh. I informed KING she was under arrest for Domestic Violence against her mother and resisting arrest.

I verify that the facts set forth in this affidavit are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa.C.S § 4904) relating to unsworn falsification to authorities.

| Officer Adam Gangaware | | 12-08-2016 |
| --- | --- | --- |
| Affiant Name | Affiant Signature | Date |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT C

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# PETER A. FEINSTEIN, M.D., P.C.

*Orthopedic Specialists of Northeastern PA*

John Heinz Institute of Rehabilitation Medicine
Medical Arts Center III, 2nd Floor
150 Mundy Street
Wilkes-Barre, PA 18702
Telephone: (570) 826-5559
Fax: (570) 826-0906

August 1, 2018

Orthopedic and
Reconstructive Surgery,
Arthroscopy,
Fracture Care,
Sports Medicine,
Carpal Tunnel Syndrome,
Repetitive Trauma Disorders,
Worker's Compensation,
Independent Medical
Examinations

Diplomate:
• American Board
  of Orthopedic Surgery

Fellow:
• American Academy
  of Orthopedic Surgeons
• American College
  of Surgeons
• ACFEI Institute of
  Forensic Science

Member:
• Pennsylvania Orthopedic
  Society
• Pennsylvania Medical
  Society
• Luzerne County
  Medical Society
• American College
  of Sports Medicine
• Keystone Chapter
  American College
  of Surgeons
• American Academy
  of Pain Management

Richard Polachek, Esq.
22 East Union Street
Wilkes-Barre, PA 18701

RE: Destiny King
Exam Date: 8-1-18

Dear Mr. Polachek:

I evaluated Destiny King in the office today at your request for an Independent Medical Examination referable to an incident occurring on 12/08/16.

Records reviewed included the following diagnostic studies, for which I reviewed the actual reports and the actual films.

I reviewed East Stroudsburg Area School District Police Department Complaint and Incident Report and Written Allegation and Affidavit of Probable Cause.

I reviewed records of Dr. Stefan Sinco, LVPGPMC Orthopedic Surgery, as well as records of Coordinated Health regarding treatment by Dr. Hoffman and Dr. Ferrante.

I also reviewed records of Pocono Medical Center/Coordinated Health, and Outpatient Assessment of Children's Service Center of Wyoming Valley.

There are Plaintiff's Discover Responses in terms of interrogatories from Destiny King, interrogatories from Meredith Beyers, photographs, and lien information.

I also reviewed records of Coordinated Health Services, Dr. Hoffman, records of Pocono Medical Center Imaging Services (Radiology Department), and records of the Children's Service Center of Wyoming Valley, Inc.

I also reviewed extensive summaries of deposition testimony taken from Destiny King.

There is a summary and report from treating physician and plaintiff's medical expert, Dr. Ferrante, dated 06/27/18.

Richard Polachek, Esq.
RE: Destiny King                                               2

Overall, these records indicate that this individual is an 18 year old who was pulled from a vehicle by a policeman who then fell on top of her and injured her leg. She had a dislocation of the left hip with a small avulsion fracture which was reduced shortly after the incident.

She received physical therapy and clearly was non-compliant, not only with that, but with her treating physicians.

She did well with no additional treatment or intervention, and her diagnostic studies did not indicate there were any complications or residuals in terms of avascular necrosis, joint space narrowing, or posttraumatic degenerative change.

Dr. Ferrante's overall assessment indicated excellent range of motion of the hip with no findings referable to her lumbar spine, absence of eventual absorption and absence of any fleck of bone that was previously apparent in terms of being absorbed or healed.

The only complaint she had in follow-up was some sensitivity to cold in terms of discomfort in that area, for which occasional ibuprofen would be felt to be helpful.

The records indicate that she had plans for further studies and vocational pursuits that were not negatively impacted by the treatment and incident in question.

I did review the actual films as follows, and would agree with the radiologist's reading as listed below.

- 12/08/16 – CT scan of left hip.
  A few displaced bony fragments are seen compatible with an avulsion fracture of the posterior acetabulum.

- 12/08/6 – x-ray left hip.
  Satisfactory post reduction alignment of the left hip joint. Small corticated fragment suspicious for fracture. Suggest CT follow-up.

- 12/08/16 – x-ray left knee.
  No acute bony abnormalities.

- 12/08/16 – x-ray left femur, hip and pelvis
  One view of the pelvis, 2 views of the left hip, and one view of the left femur were obtained. There is a superior dislocation of the left hip. No gross fractures are seen.

Richard Polachek, Esq.
RE:  Destiny King                                              3

- 12/16/16 – x-ray left hip and pelvis.
  Stable appearance of a linear fracture fragment is seen overlying the lateral aspect of the left femoral head compatible with known avulsion fracture of the posterior acetabulum.

- 12/23/16 – MRI left hip
  Marrow edema medially in the femoral head, previous impaction injury is considered. Small avulsion type injury of the posterior acetabular wall, with edema in the adjacent posterior capsule, raising question of partial disruption of the posterior joint capsule.  Mild edema in the adjacent musculature suggesting Grade I strain injuries without full thickness tear.  Slightly abnormal ligamentum teres.

- 12/30/16 – x-ray left hip and pelvis
  The linear fracture fragment is seen overlying the lateral aspect of the left femoral head, demonstrates slightly increased sclerosis and callus formation compatible with known avulsion fracture of the posterior acetabulum.  No acute findings otherwise.

- 02/27/17 x-ray left hip
  No acute fracture or dislocation seen.

- 04/20/17 x-ray left hip and pelvis
  No acute fracture or dislocation seen.

- 04/20/17 x-ray lumbar spine
  No evidence of acute fracture or dislocation.

A direct history was taken from Ms. King who, as part of that history was asked to complete the enclosed Independent Medical Examination Questionnaire and Pain Drawing.

Her  response on those forms is consistent with the history she gives me verbally and with the information in the medical records.

She also provided us with her Pennsylvania Driver's License, a photocopy of which is enclosed to serve as photo identification.

It should be noted that she also read and signed the enclosed Independent Medical Examination Form indicating she understood the nature of the exam.

Nicole   Newcomb,   employed   by   Orthopedic   Specialists   of Northeastern PA, was present during all times of patient contact during this

Richard Polachek, Esq.
RE: Destiny King                                            4

Independent Medical Examination   as a witness.   Ms. King's mother, Meredith, was also present.

On direct history, Ms. King confirms the history that she was pulled from a vehicle by a policeman in the midst of an altercation with her mother, when the policeman fell on top of her and injured her leg.  She confirms she had a dislocation of her left hip.

She tells me she was in 11th grade at the time and did graduate.  She is not working now.  She stays at home and has not decided whether she wants to go to school or do anything else.

She cannot remember the last time she saw a treating doctor, other than seeing Dr. Ferrante in June 2018.  This was because, as her mother stated, they missed their appointment in April 2018 and their attorney made the appointment with Dr. Ferrante.  Dr. Ferrante no longer took Geisinger insurance, so they could not pay for the follow-up visit, which is why they missed their appointment initially.

Ms. King is on no medication or physical therapy.  She just takes Tylenol when it bothers her, which she describes as being two to three times per month, or when it is cold and rainy.

She has no problems sitting.  She can stand as long as she has to, as long as she can change which leg her weight is on.  Walking is okay as long as it is not for more than an hour.

She does tell me that she did return to work for a short period of time two months after the incident, but could not do the 4 to 8 hours per day, 4 to 5 days per week that she was supposed to do.   She tells me that if she does get a job, it would have to be a sitting one, or one that would allow her to sit and stand at varying intervals.   When she did have a job recently, they were not accommodating so she had to quit.   She feels that she would need a 10 to 15 minute break to sit if the job was standing all day long.

She has ODD, and when she got into an argument about her recent job not accommodating her, she had an episode and was fired.

She tells me she is left hand dominant and independent in all activities of daily living in terms of signing her name, buttoning buttons, brushing her teeth, combing her hair, dressing herself, and answering a telephone.

She is able to drive.  She does not smoke.

Richard Polachek, Esq.
RE: Destiny King

5

On physical examination, this individual was weighed at 248 pounds, and measured at 71" in height.   She, in general, is clearly obese.

The upper extremities and cervical spine were not examined, as there were no issues or complaints referable to those areas, and they appeared to be grossly benign in terms of function and presentation, as was the thoracic spine.

The lumbar spine and lower extremities were entirely normal.

The only abnormality was some slight greater trochanteric bursa area discomfort to direct palpation in the left hip area which would, at best, be described as truly minimal, if at all present.

Specifically regarding her hips, internal and external rotation of the hips was equal left compared to right, with no complaints of groin pain.

True leg length measurements were equal from the anterior superior iliac spine to the medial malleolus, left lower extremity compared to right.

She was able to, in the supine position, fully extend her leg so that both right and left lower extremities were lying flat on the exam table with no hip flexion deformity.  Hip extension was normal as well.

She was able to cross her left leg in the lying position on her back, and put her foot on her right knee and let her leg hang, i.e., a Faber's type test, which was entirely normal for absence of any hip or SI joint pathology.  A similar situation existed on the right side.

Straight leg raising was negative in both lower extremities.

Palpation of the lumbar spine paravertebral musculatures, SI joints, and buttocks did not give any muscular discomfort, nor was there any spasm noted.

There were no sensory deficits in either lower extremity.

Deep tendon reflexes were normal at the knees and ankles bilaterally. There was no atrophy of the thigh or calf muscles to direct measurement with a tape measure, right compared to left.

Motor power was intact.  This individual was able to stand on her heels and toes without difficulty.  There was no weakness to resisted plantar and dorsiflexion of the right and left foot and ankles.

Richard Polachek, Esq.
RE:  Destiny King                                                  6

Trendelenburg's Test was normal and, in fact, this individual was able to balance her  entire body weight first on her right lower extremity and then her left lower extremity.

She had a normal gait.

At the conclusion of the history and physical examination, I asked Ms. King if there was anything else that she felt was important for me to know, and her mother indicated that it was important for me to know that Dr. Ferrante indicated that his concern was that there might be no blood flow that had gone to the hip for several months until healing occurred, and he did not "know if the hip will die off."  He told them it would take up to five years to know that.

Overall then, this individual suffered a traumatic dislocation of her left hip with an acetabular avulsion or rim fracture, both of which completely healed.

At this point in time, those injuries have resolved.  She has an entirely normal physical examination, is fully functional, has no residuals whatsoever on exam, and even by history has no residuals other than an occasional weather ache sensitivity, which does not require any treatment.

As such, this individual has not sustained a permanent loss of bodily function.  I would not restrict her in any way, work or otherwise.

I do not believe she needs any additional treatment at this point in time.

She is far enough from the time of injury and closed reduction to have exhibited signs of avascular necrosis on a posttraumatic basis, and clearly there is absolutely nothing to indicate that is either currently the case or would be a consideration at any point in the future.  If that was going to be the case, it would have shown up by now, and is clearly not there.

Sincerely,

Peter A. Feinstein, MD

PAF:meh

King, Destiny

# PETER A. FEINSTEIN, M.D., P.C.

*Orthopedic Specialists of Northeastern PA*

John Heinz Institute of Rehabilitation Medicine
Medical Arts Center III, 2nd Floor
150 Mundy Street
Wilkes-Barre, PA 18702
Telephone: (570) 826-5559
Fax: (570) 826-0906

Orthopedic and
Reconstructive Surgery.
Arthroscopy.
Fracture Care,
Sports Medicine.
Carpal Tunnel Syndrome,
Repetitive Trauma Disorders,
Worker's Compensation.
Independent Medical
Examinations

Diplomate:
• American Board
of Orthopedic Surgery
• American Board
of Forensic Examiners
• American Board
of Experts in Traumatic Stress

Fellow:
• American Academy
of Orthopedic Surgeons
• American College
of Surgeons
• American College of
Forensic Examiners

Member:
• Arthroscopy Association
of North America
• Eastern Orthopedic
Association
• Pennsylvania Orthopedic
Society
• American Medical
Association
• Pennsylvania Medical
Society
• Luzerne County
Medical Society
• American Academy
of Experts in Traumatic Stress

## INDEPENDENT MEDICAL EXAMINATION FORM

This Independent Medical Examination is based on review of medical records, history as given by the individual examined, subjective complaints, objective findings on physical examination, and review of any x-rays or objective tests provided to me.  The conclusions drawn are based on the assumption that the material is true, correct, and complete.  If more information becomes available at a later date, an additional report will be issued and conclusions will be modified in a way that is appropriate.

The individual examined understands that the confidentiality of medical records supplied for the I.M.E. process is waived in the context of those records being an integral part of an accurate history that is relevant to any legal proceeding.

The opinions rendered are solely those of Dr. Feinstein.  Any recommendations made as a result of this evaluation in terms of an individual's health, functional or work-related status, prognosis, appropriateness of treatment, or appropriate additional treatment, are recommendations only.  It should be noted that Dr. Feinstein is not a treating physician.  None of the opinions expressed as a result of the Independent Medical Examination will be discussed with the individual who is the subject of the exam.  Any questions in this regard are referred to the insurance company, attorney or agent responsible for scheduling the examination.  The examinee has been told that Dr. Feinstein considers his report a part of the record that can be obtained from the referring party.

Dr. Feinstein does not and will not order any additional testing (other than plain x-rays with the examinee's consent) such as Nerve Conduction Test and EMG, MRI Scan, CAT Scan, etc., nor will he provide prescriptions or any other orders that would conform with conclusions drawn in his evaluation either at the time of the evaluation or subsequent thereto. Functional capacity forms, analysis of job descriptions, completed Affidavits of Recovery, and discussion with rehabilitation counselors, nurses, etc., represent opinions only of Dr. Feinstein.

All examinees are told that should they experience pain or fear that any maneuver may cause pain, they are to voice this concern immediately.  The maneuver either will not be performed or will be performed as tolerated by the examinee's approval.

Per the AMA Code of Medical Ethics, I am disclosing that I am an independent medical examiner requested by *My Polochik* to perform this exam, and will be compensated for my time and effort by them for performing this evaluation.

This form accompanies all reports.

_Destiny King_
SIGNATURE

_8·1·18_
DATE

TO BE COMPLETED BASED ON HOW YOU FEEL TODAY

PAIN DRAWING

NAME: _Destiny Kro_          DATE: _8-1-18_

Using the symbols given below, mark the areas of your body where you feel the described sensations. Include all affected areas.

| ACHING | NUMBNESS | PINS & NEEDLES | BURNING | STABBING | OTHER spasm |
|--------|----------|----------------|---------|----------|-------|
| ▲▲▲ | = = = | OOO | XXX | / / / | .... |



BACK    FRONT

Back      Front

How frequent is your pain?
☐ Constant     (present 3/4 to all of the time)
☐ Frequent     (present 1/2 to 3/4 of the time)
☒ Occasional   (present 1/4 to 1/2 of the time)
☐ Intermittent (present less than 1/4 of the time)

On a scale from 0 (no pain) to 10 (excruciating pain):
a.  What number would you put on your pain at this time?
b.  During the past month, what has it averaged?
c.  During the past month, what is the highest it has been?
d.  During the past month, what is the lowest it has been?

What makes your pain worse?
_Cold weather, standing long time_

What makes your pain better?
_Tylenol, sitting_

Developed by P.A. Feinstein, MD
Orthopedic Specialists
Wilkes-Barre, PA 18702

## INDEPENDENT MEDICAL EVALUATION QUESTIONNAIRE

We will be seeing you soon for your Independent Medical Evaluation. We pledge that we will be both thorough and impartial. This quick and easy questionnaire will provide you with the opportunity to tell your story to us.

1. What is your full name? *Destiny Courage King*

2. What is your date of birth? *12·22·1999*

3. Are you?   ☐ Right handed   ☒ Left Handed

4. What is the date of your injury? *12·8·17*

5. Please describe how your injury in Question #4 occurred:
*I got ripped out of a car and slammed to the ground then ~~someone fell~~ ontop of me. a cop*

6. What problems from the injury in Question #4 did you have at that time? *dislocated hip and broken pelvis*

7. Are you having any other difficulties?   ☐ Yes   ☐ No   ☒ Not Sure

   If yes, please describe these difficulties in detail: _____

   _____

8. Have you ever had any previous problems or injuries, (other than the injury in Question #4) including any other work-related, recreational, or motor vehicle injuries?   ☐ Yes   ☒ No   ☐ Not Sure

   If yes, please describe: _____

   _____

9. Have you ever had any difficulties prior to the date of your injury in Question #4 that were similar to those you are now experiencing?
   ☐ Yes   ☒ No   ☐ Not Sure

   If yes, please describe: _____

   _____

10. Have you had any subsequent injuries, work-related, recreational or motor vehicle, after the date given in question #4?   ☐ Yes   ☒ No
    If yes, please describe: _____

    _____

11. Are any tasks difficult for you to perform?   ☒ Yes   ☐ No   ☐ Not Sure

If yes, please describe the the tasks that are most difficult for you:
Standing for long periods of time

12. Who were you employed by when you were injured?
Kmart

13. How long had you been working there? 5 months

14. What was your job? Cashier

15. What did this job involve? Standing long periods of time
ringing customers out and cleaning the store

16. What type of work have you performed previously? _____

17. Are you working now?   ☐ Yes   ☒ No

Is this the same job as before injury?   ☐ Yes   ☒ No

Please describe: _____

18. Has your doctor, or anyone, prescribed any work restrictions?
☒ Yes   ☐ No   ☐ Not Sure

If yes, please describe these restrictions: I was out of work
for 2 months

19. Do you smoke?   ☒ No   ☐ Yes   ☐ Yes, in the past, but I quit.
☐ Yes, _____ packs per day.

20. How many alcoholic beverages do you have per week? 0

21. Have you had any medical hospitalizations?   ☐ Yes   ☐ No   ☒ Not Sure

If yes, please describe: _____

22.   Have you had any operations?                    ☐ Yes  ☒ No

If yes, please describe: _____

_____

_____

23.   Are you taking any prescribed medications?  ☐ Yes  ☒ No

If yes, please list: _____

_____

24.   Did you take any medication today?          ☐ Yes  ☒ No
If yes, please list: _____

25.   Are you allergic to any medications?        ☐ Yes  ☒ No  ☐ Not Sure

If yes, please describe: _____

_____

26.   Have you had any other medical problems?    ☐ Yes  ☐ No  ☒ Not Sure

If yes, please describe: _____

_____

_____

SIGNED:   *Destiny King*          DATE:  8·1·18

Developed by P.A. Feinstein, MD
Orthopedic Specialists
Wilkes-Barre, PA  18702



# PETER A. FEINSTEIN, M.D., P.C.

*Orthopedic Specialists of Northeastern PA*

John Heinz Institute of Rehabilitation Medicine
Medical Arts Center III, 2nd Floor
150 Mundy Street
Wilkes-Barre, PA 18702
Telephone: (570) 826-5559
Fax: (570) 826-0906

April 7, 2020

Orthopedic and
Reconstructive Surgery,
Arthroscopy,
Fracture Care,
Sports Medicine,
Carpal Tunnel Syndrome,
Repetitive Trauma Disorders,
Worker's Compensation,
Independent Medical
Examinations

Diplomate:
• American Board
  of Orthopedic Surgery

Fellow
• American Academy
  of Orthopedic Surgeons
• American College
  of Surgeons
• ACFEI Institute of
  Forensic Science

Member
• Pennsylvania Orthopedic
  Society
• Pennsylvania Medical
  Society
• Luzerne County
  Medical Society
• American College
  of Sports Medicine
• Keystone Chapter
  American College
  of Surgeons
• American Academy
  of Pain Management

Richard Polachek, Esq.
22 East Union Street
Wilkes-Barre, PA 18701

RE: Destiny King
Addendum

Dear Mr. Polachek:

I received your communication of 03/25/20 regarding Destiny King.

In answer to your question as to when this individual would completely recover, any acute issues would be anticipated to recover within a maximum three to six month timeframe, and after two years full recovery of any even minor conditions would be expected.

This is in line with the summary letter of Dr. Ferrante to Attorney Parker on 06/27/18.

Based on his examination at that point, this individual had made a full and complete functional recovery with no evidence whatsoever on diagnostic testing of any long term sequelae or complications.

He, in fact, acknowledges that at about the two year timeframe all issues had resolved. He indicates that in the third to last full paragraph of his letter. He clearly indicates that he anticipates a full recovery from this.

I see no indication whatsoever that this individual is likely to develop osteoarthritis of the left hip, to a more severe degree in the future as she ages, with need for further treatment. There is absolutely no evidence of that as of the time of his 06/27/18 note, and it is purely conjecture.

As of 06/27/18, if this individual was going to develop osteoarthritis as a result of this injury, there would have been some finding on objective diagnostic testing to indicate that was a concern, and none of that is present.

As such, although I would agree that a possible hip replacement and treatment of osteoarthritis of the hip could amount to $100,000, there is no indication that treatment is going to ever be necessary for this individual at any point in time.

This opinion is offered within a reasonable degree of medical certainty.

Richard Polachek, Esq.
RE:  Chad Hudelson                                                    2

    I hope this information is helpful to you.

                          Sincerely,

                          Peter A. Feinstein, MD

PAF:meh

<u>CURRICULUM VITAE</u>

NAME:              Peter A. Feinstein, M.D.

DATE OF BIRTH:      July 7, 1950

## ACADEMIC DEGREE

B.A.  1972
Brown University, Providence, Rhode Island

MMS   1974 (Master of Medical Science)
Brown University, Providence, Rhode Island

## MEDICAL DEGREE

M.D.  1975
Brown University, Providence, Rhode Island

## INTERNSHIP & RESIDENCY TRAINING

Rotating Medicine & Surgery 1975-1976
General Surgery 1976-1977
Albert Einstein College of Medicine, Montefiore Hospital,
New York, New York

## ORTHOPEDIC RESIDENCY & FELLOWSHIP

Orthopedic Surgery 1977-1980
Resident and Junior Annie C. Kane Fellow, Orthopedic Surgery
Columbia College of Physicians and Surgeons,
Columbia-Presbyterian Medical Center,
The New York Orthopedic Hospital,  New York, New York

## CERTIFICATION

American Board of Orthopedic Surgery       - November, 1981-present
Arthroscopy Association of North America   - November, 1991-2007
American Board of Forensic Examiners       - February, 1995-present
  (by invitation)
American Academy of Experts in             - June,     1997-2014
  Traumatic Stress (by invitation)
  Board Certified in:
  -Forensic Traumatology
  -Motor Vehicle Trauma
  -Disability Trauma

## STATE LICENSURE (ACTIVE)

Pennsylvania      MD-022816-E
Florida           ME-105003
New York State    127295
Kentucky          43788
Delaware          C1-0011261

PETER A. FEINSTEIN, M.D.                                    PAGE 2
CURRICULUM VITAE

PROFESSIONAL ACTIVITIES

- Five patents granted and four patents pending for inventions related to as well as unrelated to medicine.

- Currently serving as Consultant to FDA Medical Devices Panel — SGE" (Special Government Employee)
  "Employee will serve as consultant to the Orthopaedic and Rehabilitation Devices Panel, to other panels of the Medical Devices Advisory Committee, and to the Center for Devices and Radiological Health." Four year term beginning 10/21/09. Term renewed for additional four years starting 03/13.

- Active Clinical Faculty Advisor for the Eli Lilly Company, 2010. Currently listed on Eli Lilly Database as a Clinical Faculty Advisor.

- HIMSS (Health Information Management Systems Society). Webinar presentation to a national audience of Chief Information Officers and C-Level Executives on Smart Card technology and RHIOs (Regional Health Information Organizations) January 17, 2007

- Wyoming Seminary School Instructor – Teaching full time anatomy class to high school seniors (2002 to 2005)

- Keynote Speaker for Seminar to Discuss Recent Developments in Workers' Compensation, November 17, 1997, Wilkes-Barre, PA

- American Academy of Orthopedic Surgeons Council on Clinical Resources. Workshop for Recommendations to Board of Directors of Academy on Endoscopic Carpal Tunnel Release in Orthopedic Surgery. (Member of an eleven person national panel). September 11, 1992, Chicago, Illinois

- People to People Performing Arts Medicine Delegate to Russia, Czechoslovakia and Hungary.. Member of a twenty person team for professional exchange. October 11-25, 1992 Education Foundation

- Member, Arthroscopy Board of North America Test Development Committee – Responsible for developing a new board certification test using interactive video testing with Educational Testing Services of

- Princeton, New Jersey, 1990

- Chairman, Cancer Committee, Continuing Education Program, Wilkes-Barre General Hospital, 1990

- Certified for Agee Inside Job – Endoscopic Carpal Tunnel Release, May, 1990

- Certified for Automated Percutaneous Discectomy, December, 1989

- Police Department Appeal from Termination Panel.

PETER A FEINSTEIN, M.D.                                    PAGE 3
CURRICULUM VITAE

## ASSOCIATIONS

Fellow, American Academy of Orthopedic Surgeons (Current Member)
Fellow, American College of Surgeons (Current Member)
Fellow, American College of Forensic Examiners (Current Member)
Fellow, American Academy of Experts in Traumatic Stress (1997-2014)
Eastern Pennsylvania American College of Surgeons (Current Member)
American Medical Association (1981-2010)   Voluntarily declined
    membership beginning in 2011 because of political and philosophical
    differences with AMA policies.
Eastern Orthopedic Association (1990-2008)
American Academy of Disability Evaluating Physicians  (1998-2001)
American Academy of Pain Management (Current Member)
American College of Sports Medicine (Current Member)

## SOCIETIES

Florida Medical Association (Current member)
Pennsylvania Orthopedic Society (Current Member)
Pennsylvania Medical Society (Current Member)
Luzerne County Medical Society (Current Member)

## HOSPITAL AFFILIATIONS

Wilkes-Barre General Hospital – Wilkes-Barre – July, 1981 to present
    Active Staff in Orthopedic Surgery

Mercy Hospital              – Wilkes-Barre – 1981-2007
    Courtesy Staff in Orthopedic Surgery

Geisinger Wyo.Valley Med.Ctr. – Wilkes-Barre – September, 2001 to present
    Courtesy Staff in Orthopedic Surgery

John Heinz Institute of Rehabilitation –Wilkes-Barre– ~1985 to present
    Active/ Courtesy Staff in Orthopedic Surgery

## PUBLICATIONS

See attached list of publications

## RECORD OF EDUCATIONAL MEETINGS & SEMINARS

Available on request

## COMMUNITY RESPONSIBILITIES

Area Chair, Brown University Alumni Admissions Interviewer,
    Northeastern Pennsylvania, 2005

Yale University Parents Annual Fund Solicitor – (2003)
    One of "20-25 parents from the incoming freshman class"
    asked to accept this involvement.

Brown University "Henry Merritt Wriston Associates" Francis
    Wayland Fellows – (2003)

Brown University Alumni Interviewer Northeastern Pennsylvania,
    2003

PETER A. FEINSTIEN, MD                                    PAGE 4
CURRICULULM VITAE

Board Member, United Jewish Appeal, Jewish Federation 1984-1994

Member, National Young Leadership Cabinet, United Jewish Appeal
    1986-1991

Board Member, Jewish Community Center of Wilkes-Barre    1984-1990

Board Member, Northeastern Pennsylvania Philharmonic, 1985-1991
    Executive Committee Member  1990

General Chairman, Wilkes-Barre United Jewish Campaign  1991-1992

Past Chairman, Vital Division, United Jewish Appeal Campaign

Past Chairman, Young Business & Professionals Division, United
    Jewish Appeal Campaign

Past Chairman, Health Professionals Division, United Jewish
    Appeal Campaign

Member, Allocations Committee, United Jewish Appeal, 1991, 1992

Member, Long Range Planning Committee of Temple Israel

General Chairman, Northeastern Pennsylvania Philharmonic
    Annual Campaign, 1986-1987

Past Chairman, Doctor's Division, Northeastern Pennsylvania
    Philharmonic Annual Campaign

Trustee Associate, College Misericordia, 1991

Physicians Division Committee, 1991, 1992 United Way Campaign

PERSONAL

    Recreational Interests:
    Participant - The Greater Wilkes-Barre Area Triathlon
         1984-1987, 1992
    Key West Triathlon, 2013

PUBLICATIONS

1)    Feinstein, PA, Harris, M:   Family Trusted Digital ID System, The
      Pediatrician's Office as the Primary Community Resource for the National
      Center for Missing & Exploited Children and the Amber Alert System.
      [Poster Presentation] The American Academy of
      Pediatrics 2004 National Conference & Exhibition, October 9-13, 2004, San
      Francisco, CA.

2)    Feinstein, PA, Harris, M:  Family Trusted Digital ID System, The
      Pediatrician's Office as the Primary Community Resource for the
      National Center for Missing & Exploited Children and the Amber
      Alert System.  [Abstract] The American Academy of Pediatrics
      2004 National Conference & Exhibition, October 9-13, 2004,
      San Francisco, CA.

PETER A. FEINSTEIN, M.D.                               PAGE 5
CURRICULUM VITAE

3)   Feinstein, PA:  JBJS, Electronic Letter, Reader Roundtable
     RE:  Provider Volume of Total Knee Arthroplasties and Patient
     Outcomes in the HCUP-Nationwide Inpatient Sample, October 2003
     J Bone Joint Surg Am 2003; 85: 1775-1783

4)   Feinstein, PA:  Forbes Magazine, Letters to the Editor -
     Health Care Reform/Malpractice Reform, February 28, 1994.
     Vol. 153, No. 5., Page 22.

5)   Feinstein, PA:  Endoscopic Carpal Tunnel Release in a
     Community-Based Series.  The Journal of Hand Surgery, May 1993.
     Vol. 18, No. 3, PP. 451-454.

6)   Feinstein, PA:  Editorial Response, Carpal Tunnel Endoscopy:
     More Than One Way.  Orthopedics Today, 4-5, June, 1992.

7)   Feinstein, PA:  Endoscopic Carpal Tunnel Release, Results and
     Complications in a Large Community-Based Practice.  Paper
     presented at the American Academy of Orthopedic Surgeons Annual
     Convention, February, 1992, Washington, DC.

8)   Feinstein, PA:  Endoscopic Carpal Tunnel Release, Results and
     Complications in a Large Community-Based Practice.  Orthopedic
     Audio Synopsis Foundation for Continuing Education in
     Orthopedic Surgery.  Published, June, 1992.

9)   Feinstein, PA:  Scope Carpal Tunnel Release Nerve Risk Outweighs
     Benefit.  Orthopedics Today Volume 12, No. 3:  March, 1992.
     Pages 1, 19.

10)  Feinstein, PA:  Endoscopic Carpal Tunnel Release, Results and
     Complications in a Large Community-Based Practice.  Orthopedic
     Transactions, Journal of Bone & Joint Surgery, Volume 13,
     Number 3, Winter 1992-1993, Page 685.

11)  D'Anca, Sternlieb, Byron, Feinstein - External Fixator
     Management of Unstable Colles' Fractures:  An Alternative Method.
     Orthopedics, Volume 7, Number 5, May 1984, 853-859.

12)  Feinstein, PA:  Orthopedic Management of the Three General Types
     of Symptomatic Flatfoot.  Orthopedic Review 8:  123-129, May 1979.

13)  Feinstein, PA, Garcia A:  The Triple Arthrodesis:  An Analysis of
     Clinical Features Associated with Revision in Fifty Patients.
     Paper presented to American Orthopedic Association Twelfth Annual
     Residents' Conference, Gainesville, Florida, April 4-6, 1979.

14)  Feinstein, PA, Kane, R:  Subtalar Extra-Articular Arthrodesis
     (Grice Procedure) in the Treatment of Valgus Deformities of the
     Foot.  Paper presented to American Orthopedic Association Eleventh
     Annual Residents' Conference, San Antonio, Texas,
     March 29-31, 1978.

PETER A. FEINSTEIN, MD
CURRICULUM VITAE

PAGE 6

15) Habermann, ET, Feinstein, PA: Total Hip Replacement Arthroplasty
in Arthritic Conditions of the Hip Joint.  Seminars in Arthritis
and Rheumatism 7:  189-231, 1978.

16) Feinstein, PA:  The Current Status of Surgical Alternatives to
Total Hip Replacement in the Treatment of Arthritis of the Hip.
Orthopedic Review 7:  55-59, 1978.

17) Feinstein, PA:  Somberg E., Brodman, H:  Paget's Disease of the
Scrotum Presenting as an Inguinal Lymph Node.  Journal of
Urology 118:  688-689, 1977.

18) Feinstein, PA, Habermann, ET:  Selecting & Preparing Patients
for Total Hip Replacement.  Geriatrics 32:  91-96, 1977.

19) Feinstein, PA, Kaplan, SR, Thayer, WR:  The Alternate
Complement Pathway in Inflammatory Disease, Quantitation of the
C-3 Proactivator (factor B) Protein.  Gastroenterology 70:
181-185, 1976.

20) Feinstein, PA, Kaplan, SR:  The Alternate Pathway of Complement
Activation in the Neonate.  Pediatric Research 9:  803-806, 1975.

21) Feinstein, PA, Kaplan SR, Thayer WR:  Alternate Complement
Pathway Activation in Inflammatory Bowel Disease.
Gastroenterology 68:  A-232, 1975.

PAFCV-November2014

# RECORD OF CONTINUING MEDICAL EDUCATION for AMA's PHYSICIANS RECOGNITION AWARD

List below all hours in which you participated in any type of continuing medical education activity.

## CATEGORY 1

| Dates of Attendance (inclusive) | Location City | State | Description of Learning Activity (Name of course) | Sponsor: Institution Organization | Hours of Study |
|---|---|---|---|---|---|
| March 8-13, 1981 | Snowmass, CO | | Spine Study Group on Modern Concepts of Cervical & Lumbar Spine | University of Penna. | 20 |
| June 6-12, 1981 | San Francisco, CA | | San Francisco Ortho. Review Course | University of California | 40 |
| August 14-16., 1981 | Dallas, TX | | Southwestern Ortho. Surgery Review | University of Texas | 25 |
| January 21-26, 1982 | New Orleans, LA | | 49th Annual Meeting | American Academy of Orthopedic Surgeons | 35 |
| May 12, 1982 | Wilkes-Barre, PA | | New Prospects on Arthritis | Wilkes-Barre General Hospital | 3 |
| February 28-March 2, 83 | Boston, MA | | Emergency Treatment of Orthopedic and Sports Injuries | Boston Univ. School of Medicine | 16 |
| March 22, 1983 | Chicago, IL | | Intradiscal Therapy | Amer. Academy of Ortho Surgeons | 8 |
| February, 1984 | Atlanta, GA | | Annual Meeting | Amer. Academy of Ortho Surgeons | 35 |
| November 3, 1984 | New York, NY | | External Fixation | Columbia University | 8½ |
| February, 1986 | New Orleans, LA | | Annual Meeting | Amer. Academy of Ortho. Surgeons | 35 |
| March, 1986 | San Francisco, CA | | Annual Arthroscopy Meeting | Amer. Arthros. Assoc. of NA | 12¼ |
| October 15-19, 1986 | Southampton, Bermuda | | 17th Annual Meeting | Eastern Orthopaedic Assoc. | 21 |
| Jan.-Dec., 1986. | Wilkes-Barre, PA | | Tumor Board Meetings | Wilkes-Barre General Hospital | 1.5 |
| April, 1987 | New York | | Columbia-Presbyterian Alumni Association Mtg. | Columbia-Presbyterian Hosp. | 14 |
| February, 1988 | Atlanta, Georgia | | 55th Annual Meeting | American Acad. of Ortho. Surg. | 34.5 |
| March 13-14, 1989 | New York, NY | | State of the Art Complex Primary & Revision Knee/Hip Arthroplasty | The Mount Sinai Medical Center | 9 |
| March 15-16, 1989 | New York, NY | | State of the Art Complex Primary & Revision Knee/Hip Arthroplasty | The Mount Sinai Medical Center | 10 |
| May 20, 1989 | East Orange, NJ | | CO$_2$ Laser in Arthroscopic Knee Surgery | Education Design, Inc. | 6.5 |

At the end of each three-year period

or

as soon as you have 150 hours total with at least 60 hours in Category 1 ...... copy the information in the proper sections of the P R A Application and submit with your application fee to the address indicated on the application.

Form 1600.003

**CONTINUING MEDICAL EDUCATION for AMA's PHYSICIAN'S RECOGNITION AWARD**

List below all hours in which you participated in any type of continuing medical education activity.

# CATEGORIES OTHER THAN 1

| Dates of Attendance (inclusive) | Location City | State | Description of Learning Activity (Name of course, paper, journal, self-assessment program, etc.) | Sponsor: Institution Publication Physician or Self | Hours of Study | Category No. |
|---|---|---|---|---|---|---|
| 2/83 - 11/86 | Wilkes-Barre | PA | Medical Staff Meetings | Wilkes-Barre General Hospital | 17 | 2 |
| 1984 - 1986 | Wilkes-Barre | PA | Surgical Division Meetings | Mercy Hospital | 18 | 2 |
| 1984 - 1986 | Wilkes-Barre | PA | Medical Staff Meetings | Mercy Hospital | 11 | 2 |
| 9/85 - 10/86 | Kingston | PA | Medical Staff Meetings | Nesbitt Memorial Hospital | 6 | 2 |
| 9/85 - 10/86 | Kingston | PA | Dept. of Surgery Meetings | Nesbitt Memorial Hospital | 5 | 2 |
| 1/88 | New York, | NY | Hands-On Workshop | Midas-Rex Institute | 18 | 2 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

At the end of each three-year period
· or ·
as soon as you have 150 hours total with at least 60 hours in Category 1 . . . . copy the information in the proper sections of the P.R.A. Application and submit with your application fee to the address indicated on the application.

Form 1800.004

CONTINUING MEDICAL EDUCATION for AMA's PHYSICIAN RECOGNITION AWARD

List below all hours in which you participated in any type of continuing medical education activity.

CATEGORY 1

| Dates of Attendance (inclusive) | Location City | State | Description of Learning Activity (Name of course) | Sponsor: Institution Organization | Hours of Study |
|---|---|---|---|---|---|
| Dec. 9-10-, 1989 | San Francisco, CA | | Automated Percutaneous Discectomy | University of California | 11.5 |
| February, 1990 | New Orleans, LA | | 57 Annual Meeting of the American Academy of Orthopedic Surgeons | American Academy of Ortho. Surg. | 34.5 |
| April 27-29, 1991 | New York, NY | | New York Orthopedic Hospital 125th Anniversary Celebration | College of Physicians & Surgeons of Columbia University | 18 |
| October 17-23, 1991 | Madrid, Spain | | 22nd Annual Meeting | Eastern Orthopedic Association | 18 |
| February 20-23, 1992 | Washington, DC | | 59th Annual Meeting | American Academy of Ortho.Surg. | 30.5 |
| February 23, 1992 | Washington, DC | | Specialty Day | Arthroscopy Association of North America | 7.25 |
| October 20, 1992 | Wilkes-Barre, PA | | "Curing & Caring" | Pennsylvania Medical Society Liability Insurance Co. | 3 |
| October 7-9, 1993 | Albuquerque, NM | | The Shoulder: Arthroscopic Evaluation & Treatment | Arthroscopy Assoc. of North America | 7.25 |
| November, 1993 | Wilkes-Barre, PA | | "Why Patients Sue" | Pennsylvania Medical Society Liability Insurance Co. | 6 |
| December 12-17, 1993 | Davos, Switzerland | | AO/ASIF Davos Basic Orthopedics Course | AO/ASIF Continuing Education | 40 |
| February 18-21, 1995 | Orlando, Florida | | 62nd Annual Meeting | American Academy of Ortho.Surg. | 30.5 |
| February 19, 1995 | Orlando, Florida | | Specialty Day | Arthroscopy Association of North America | 7 |
| April 28, 1995 | New Orleans, LA | | New Advances in Prophylaxis of Venous Thromboembolism in Joint Replacement | Louisiana State Univ. School of Medicine | 1 |
| February 22-26, 1996 | Atlanta, Georgia | | 63rd Annual Meeting | American Academy of Orthopedic Surgeons | 28.5 |
| April 11-14, 1996 | Washington, DC | | 15th Annual Meeting | Arthroscopy Association of North America | 18.25 |
| April 13, 1996 | Washington, DC | | Assorted Shoulder Conditions | Arthroscopy Association of North America | 1.5 |

end of each three-year period

ave 150 hours total with at least 60 hours in Category 1 . . . . . copy the information in the proper
Application and submit with your application fee to the address indicated on the application.
sections o. ...

Form 1600.003

PETER A. FEINSTEIN, MD

RECORD OF CONTINUING MEDICAL EDUCATION FOR AMA'S PHYSICIAN RECOGNITION AWARD          CATEGORY 1

| Dates of Attendance | Location | Description of Learning Activity | Sponsor | Hours |
|---|---|---|---|---|
| May 15, 1998 | Philadelphia, PA | Workers Comp. Impairment Evaluation | PA Medical Society | 7.25 |
| September 18, 1998 | Wilkes-Barre, PA | Independent Study Course | Medical Risk Management | 8.50 |
| March 15-19, 2000 | Orlando, FL | 67th AAOS Annual Meeting | American Academy of Orthopedic Surgeons | 24.5 |
| March 18, 2000 | Orlando, FL | Specialty Day | American Association of Hip & Knee Surgeons | 8.0 |
| April 13-16, 2000 | Miami Beach, FL | Instruction Course Articular Cartilage Injuries | Arthroscopy Association of North America | 1.5 |
| November 2, 2001 | Wilkes-Barre, PA | Independent Study Course | Medical Risk Management | 10.0 |
| February 13-16, 2002 | Dallas, TX | 69th AAOS Annual Meeting | American Academy of Orthopedic Surgeons | 24.0 |
| April 27, 2002 | Washington, DC | 21st Annual Meeting | Arthroscopy Association of North America | 13.75 |
| June 27, 2003 | Philadelphia, PA | A Look Into the Future in Total Hip Surgery | Healthstream | 9.0 |
| September 5-7, 2003 | New York, NY | 6th Annual Insall Scott Kelly Inst. Sports Medicine & Total Knee Symposium | Healthstream | 21.0 |
| February 21-22, 2004 | Philadelphia, PA | Jefferson Upper Extremity Imaging Symposium | Jefferson Medical College | 10.75 |
| June 18-20, 2004 | Boca Raton, FL | FPS 2004 Annual Conference | American Academy of Pediatrics & Florida Pediatric Society | 15.0 |

PETER A. FEINSTEIN, MD
RECORD OF CONTINUING MEDICAL EDUCATION FOR AMA'S PHYSICIAN RECOGNITION AWARD
CATEGORY 1

| Dates of Attendance | Location | Description of Learning Activity | Sponsor | Hours |
|---|---|---|---|---|
| September 21, 2004 | Scranton, PA | Streetwise, Series 6, Seminar | Medical Risk Mgmt. Inc. | 2.5 |
| October 1, 2004 | Wilkes-Barre, PA | Streetwise, Series 6 Independent Study Course | Medical Risk Mgmt. Inc. | 6 |
| February 23-27, 2005 | Washington, DC | 72nd AAOS Annual Meeting | American Academy of Orthopedic Surgeons | 28 |
| October, 2006 | Wilkes-Barre, PA | Consult Quiz (x12) | PA Medical Society | 12 |
| April, 2007 | Wilkes-Barre, PA | Consult Quiz (x2) Intouch Quiz (x1) | PA Medical Society | 3 |
| September 25, 2007 | Scranton, PA | Risk Management Consult Failure to Diagnose | Medical Protective Company | 8.5 |
| October, 2007 | Wilkes-Barre, PA | Consult Quiz | PA Medical Society | 1 |
| November, 2007 | Wilkes-Barre, PA | Consult Quiz | PA Medical Society | 1 |
| March, 2008 | Wilkes-Barre, PA | Consult Quiz | PA Medical Society | 1 |
| April, 2008 | Wilkes-Barre, PA | Consult Quiz | PA Medical Society | 1 |
| April 16, 2008 | Wilkes-Barre, PA | Update: Patient Safety & Risk Management 2008/2009 | InforMed Pennsylvania Physician | 12 |
| April 9, 2009 | Wilkes-Barre, PA | Consult Quiz | PA Medical Society | 1 |
| April 10, 2009 | Wilkes-Barre, PA | In Touch | PA Medical Society | 1 |
| May 8, 2009 | Wilkes-Barre, PA | In Touch (x6) Consult Quiz (x2) | PA Medical Society | 8 |

PETER A. FEINSTEIN, MD
RECORD OF CONTINUING MEDICAL EDUCATION FOR AMA'S PHYSICIAN RECOGNITION AWARD
CATEGORY 1

| Dates of Attendance | Location | Description of Learning Activity | Sponsor | Hours |
|---|---|---|---|---|
| May 14, 2009 | Wilkes-Barre, PA | Consult Quiz (x2) | PA Medical Society | 2 |
| May 15, 2009 | New York, NY | Orthopedic Trauma 2009 | Columbia Univ. College of Physicians & Surgeons | 15 |
| May 31, 2009 | Wilkes-Barre, PA | Consult | PA Medical Society | 1 |
| September 11, 2009 | Wilkes-Barre, PA | Consult | PA Medical Society | 1 |
| November 9, 2009 | Wilkes-Barre, PA | Consult / In Touch | PA Medical Society | 1.5 |
| June 21, 2010 | Wilkes-Barre, PA | HIV & Aids Update | Florida Area Health Educators Network | 1 |
| June 28, 2010 | Wilkes-Barre, PA | Prevention of Medical Errors | Florida Medical Association | 2 |
| July 20, 2010 | Wilkes-Barre, PA | Kentucky State HIV Certification for Medical Professionals | University of Kentucky College of Medicine | 2 |
| October 11, 2010 | Wilkes-Barre, PA | In Touch | PA Medical Society | 1 |
| January 19, 2011 | Wilkes-Barre, PA | 2010-2011 InforMed Patient Safety Update | InforMed | 12 |
| April 11, 2011 | Wilkes-Barre, PA | In Touch | PA Medical Society | 1 |
| May 6, 2011 | Wilkes-Barre, PA | Risk Management Rounds: Physicians, Case Studies, Second Edition | Medical Risk Mgmt., Inc. | 5 |

PETER A. FEINSTEIN, MD
RECORD OF CONTINUING MEDICAL EDUCATION FOR AMA'S PHYSICIAN RECOGNITION AWARD
CATEGORY 1

| Dates of Attendance | Location | Description of Learning Activity | Sponsor | Hours |
|---|---|---|---|---|
| May 6, 2011 | Wilkes-Barre, PA | Risk Management Rounds: Surgery, Case Studies | Medical Protective Company | 6 |
| January 3, 2012 | Wilkes-Barre, PA | Autoimmune Diseases | CME Resource | 15 |
| January 3, 2012 | Wilkes-Barre, PA | Influenza: A Comprehensive Review | CME Resource | 10 |
| January 3, 2012 | Wilkes-Barre, PA | Medical Error Prevention and Root Cause Analysis | CME Resource | 2 |
| January 25, 2012 | Wilkes-Barre, PA | Potential Health Impacts of Natural Gas Extraction with Hydraulic Fracturing | Wyoming Valley Health Care System | 1 |
| February 10, 2012 | Wilkes-Barre, PA | Animal-Related Health Risks | CME Resource | 15 |
| February 19, 2013 | Wilkes-Barre, PA | Medical Ethics for Physicians | CME Resource | 5 |
| | | Pneumonia | | 10 |
| | | Palliative Care and Pain Management at the End of Life | | 15 |
| June 8, 2013 | Wilkes-Barre, PA | SIPS, Analysis of the Multiple Risks Involving the use of IV Fentanyl | PA Medical Society | 1 |
| September 20, 2013 | Wilkes-Barre, PA | In Touch | PA Medical Society | 1 |
| February 7, 2014 | Wilkes-Barre, PA | Chronic Pain Syndromes | CME Resource | 15 |
| | | Pressure Ulcers | | 10 |
| | | Domestic Violence | | 2 |
| | | Medical Error Prevention | | 2 |
| June 13, 2014 | Wilkes-Barre, PA | Risk Management and Rounds: Surgery, Second Edition | Medical Risk Mgmt. | 6 |

PETER A. FEINSTEIN, MD
RECORD OF CONTINUING MEDICAL EDUCATION FOR AMA'S PHYSICIAN RECOGNITION AWARD
CATEGORY 1

| Dates of Attendance | Location | Description of Learning Activity | Sponsor | Hours |
|---|---|---|---|---|
| June 13, 2014 | Wilkes-Barre, PA | Risk Management and Rounds: Surgery, Second Edition | Medical Risk Mgmt. | 6 |
| December 3, 2014 | Wilkes-Barre, PA | Terminating the Physician/Patient Relationship | PA Medical Society | 1 |
| February 6, 2015 | Wilkes-Barre, PA | Prescription Opioids: Risk Management and Strategies for Safe Use | NetCE | 15 |
| February 6, 2015 | Wilkes-Barre, PA | Cancer Screening | NetCE | 10 |
| February 6, 2015 | Wilkes-Barre, PA | Medical Error Prevention and Root Cause | NetCE | 2 |
| February 6, 2015 | Wilkes-Barre, PA | Domestic Violence: The Florida Requirement | NetCE | 2 |
| March 25, 2015 | Wilkes-Barre, PA | In Touch | PA Medical Society | 1 |
| August 13, 2015 | Wilkes-Barre, PA | Managing Risk Vol. 6: The Difficult Patient – Strategies for Better Communication | PA Medical Society | 1 |
| March 1, 2016 | Wilkes-Barre, PA | Posttraumatic Stress Disorder<br>Ischemic Stroke<br>Medical Marijuana & Other Cannabinoids | NetCE | 15<br>10<br>5 |
| March 1-5, 2016 | Orlando, FL | American Academy of Orthopedic Surgeons 2016 Annual Meeting | AAOS | 37 |
| March 14, 2016 | Wilkes-Barre, PA | Child Abuse Recognition and Reporting | InforMed | 2 |

**********************************

# EXHIBIT D

**********************************

# Expert Opinion Report

## By JOSEPH J. STINE

QUALIFICATIONS

I am the former Police Chief of New Britain Township Pennsylvania (1990 – 2000). I am the former executive officer of the Police Training Bureau for the City of Philadelphia. In my 25 years with the Philadelphia Police Department, I served in every rank from Patrolman through Inspector. I was a Detective for three years and the night command Captain in charge of the Detective Bureau for 2 years. I was a patrol district supervisor at the ranks of Sergeant, Lieutenant and Captain for 12 years. I am the former School Director for the Philadelphia Police Recruit Training Academy. I am currently certified as an instructor for Police training for the Commonwealth of Pennsylvania. I have developed and delivered training programs for the officers and supervisors of the Southeast Pennsylvania Transportation Authority Police Department.

I have been an adjunct faculty member in Criminal Justice Departments at Temple University, Holy Family College, Delaware Valley College and Philadelphia Community College.

I am a graduate of the Federal Bureau of Investigation National Academy and the Police Executive Research Forum. I graduated from St. Joseph University with a Master of Science Degree in Administration of Criminal Justice. I am a life member of the International Association of Chiefs of Police, where I served on the Education and Training Committee from 1991 through 2003.

I have been recognized as an expert in the training, practices and procedures utilized by the police in the performance of their duties. My expertise in these areas has been accepted in numerous state and federal courts as well as by the United States Court of Appeals for the Sixth Circuit.

A copy of my curriculum vitae has been previously provided.

I have been retained by the Polachek Law Firm, P.C. to review the case of and pertinent documents and materials relating to the matter of <u>D.K., a minor, by and through her natural parent and guardian, Meredith Beyers, in her own right vs. East Stroudsburg School District and Adam Gangaware.</u> I now offer my expert opinion, to a reasonable degree of professional certainty, on the practices and procedures utilized. This opinion is based upon the review of the materials and information made available to me. In rendering this opinion I have utilized my education and experience in law enforcement and academia.

I reserve the right to change or modify this opinion should additional facts, documents or evidence become available to me.

**MATERIALS AND DOCUMENTS REVIEWED:**

1.  Complaint
2.  Plaintiffs' Interrogatories and Defendants' Answers
3.  Defendants' Interrogatories and Plaintiffs' Answers
4.  Defendants' Statement of Facts
5.  Defendant's Supplemental Statement of Facts
6.  East Stroudsburg Area School District Police Department Incident Report # 20170884
7.  Written Allegation
8.  Disposition Documents
9.  East Stroudsburg Area School District Police Department Policies
10. East Stroudsburg Area School District Police Department Personnel File for Adam Gangaware
11. Motion for Summary Judgement with Exhibits
12. Depositions:
    A.  Adam Gangaware with Exhibits
    B.  Victor Malvagno

2

    C.   Officer Richard Fehrle

    D.   Superintendent William Riker

    E.   Chief Fredrick Mills with Exhibits

    F.   Meredith Beyers

    G.   Destiny King, D.K.

13. Audio recordings of calls to Monroe County Communication Center 911 re: this incident

14. Monroe County Communication Center Radio Time Log for incident

15. Monroe County Communication Center call to Pennsylvania State Police

16. Student Demographi9c Sheet re; Destiny King

17. Photo of Destiny King

18. ESASDPD Training Records for Officer Gangaware

19. Ronald H. Traenkle Report

20. Meredith Beyers Photo Exhibits

The following are my expert opinions, given to a reasonable degree of professional certainty, in the matter of <u>D.K., a minor, by and through her natural parent and guardian, Meredith Beyers, in her own right vs. East Stroudsburg School District and Adam Gangaware.</u>

### Origin and Details of Underlying Incident

On December 8th, 2016 at approximately 7:13 AM East Stroudsburg Area School District Police Department (ESASDPD) Officer Adam Gangaware was on duty, in full uniform and operating a marked ESASDPD vehicle. Officer Gangaware was assigned to East Stroudsburg High School North.

All parties agree that the following occurred:

There was approximately two inches of snow on the ground. Shortly before 7:13 AM Ms. Meredith Beyers made four calls to 911. In those calls Ms. Beyers stated that her daughter

3

was hanging up the phone. That her daughter was attempting to beat her up. That her daughter was attempting to get out of a moving SUV. That she, Ms. Beyers needed help.

Ms. Beyers and her daughter Destiny King state that prior to these calls to 911 the following things occurred:

- Ms. Beyers is Ms. King's biological mother
- Ms. King was less than 2 weeks short of her 17th Birthday at the time of this incident
- Ms. King was 5 feet 7inches tall and weighed approximately 230 lbs. at the time of this incident
- Ms. King and Ms. Beyers were running late for school and work
- Ms. King began telling her mother, while they were at home, that she did not want to go to school
- Ms. King missed the school bus and had to be driven to school by Ms. Beyers
- Ms. King had a history of not wanting to go to school
- Ms. Beyers had a history of forcing Ms. King to go to school
- When Ms. Beyers and Ms. King arrived at the East Stroudsburg High School North Ms. King refused to get out of the SUV
- As punishment for refusing to go to school Ms. Beyers confiscated Ms. King's cell phone
- Ms. King wanted her cell phone back
- Ms. Beyers arrived at the conclusion she needed help to get Ms. King out of the SUV
- Ms. Beyers attempted to call 911 because she needed help with Ms. King
- Ms. King physically stopped her from communicating with the 911 operator
- After repeated attempts, Ms. Beyers managed to call 911 and report that she was getting beat up and needed help
- Ms. Beyers and Ms. King agree that during this altercation Ms. King hit Ms. Beyers

4

- Ms. Beyers and Ms. King agree that Ms. King got out of the SUV while it was still moving
- Ms. King exited the red SUV and was walking on school property

At approximately 7:13 AM Officer Gangaware received a radio call from Monroe County Communication Center (MCCC) that an active domestic violence fight was occurring on the school grounds in front of the school. Officer Gangaware responded to the call. On the way to the location of the call Officer Gangaware spoke to school Security Officer Malvagno, who informed him that he had observed a person in a grey hoodie walking on school grounds. Officer Malvagno further stated that a red SUV was following and attempting to get the person in the grey hoodie to enter the red SUV.

In front of the school Officer Gangaware observed a stopped red SUV with its emergency flashers on. He also observed person in a grey hoodie walking away from the SUV. As Officer Gangaware approached the red SUV Ms. Beyers exited the SUV. Officer Gangaware exited his marked vehicle and saw that Ms. Beyers was very upset. Ms. Beyers informed Officer Gangaware that her daughter had assaulted her.

The parties involved in the encounter in front of the school, which ensued, differ on what occurred from this point in time.

Officer Gangaware states the following:

- He observed scratches, and bleeding cuts on Ms. Beyers arms
- He observed that Ms. Beyers face was red
- After he spoke to Ms. Beyers and found out that she had been assaulted by Ms. King he went to speak to Ms. King
- Ms. King was about 500 feet away
- Officer Gangaware drove to where Ms. King was
- Unbeknownst to him Ms. Beyers got back in her SUV and followed

- When he attempted to speak to Ms. King she ran away from him and entered the front passenger side door of the red SUV that was occupied by Ms. Beyers
- Ms. King locked the doors to the SUV
- Ms. King told Ms. Beyers to drive away
- Ms. Beyers attempted to unlock the SUV doors
- Ms. King began hitting Ms. Beyers on the head, neck and back with her closed fist
- Officer Gangaware managed to enter the rear passenger side door
- Officer Gangaware grabbed Ms. King by the right arm
- Officer Gangaware held Ms. King's right arm
- Officer Gangaware repeatedly ordered Ms. King to get out of the SUV
- Officer Gangaware repeatedly told Ms. King she was under arrest
- Ms. Beyers was repeatedly telling Ms. King to listen to the officer, cooperate and get out of the SUV
- Ms. Beyers unlocked the SUV door
- Ms. Beyers flung open the front passenger door
- Officer Gangaware got out of the SUV
- Officer Gangaware attempted to pull Ms. King out of the S\UV through the open SUV door
- Ms. King thwarted his efforts by holding on to the steering wheel
- Officer Gangaware was eventually successful in removing Ms. King from the SUV
- When he got Ms. King out of the SUV they both slipped on the snowy ground and fell
- Officer Gangaware fell on top of her
- Officer Gangaware handcuffed Ms. King
- Ms. King complained of pain in her leg
- Officer Gangaware called for EMS and an Ambulance
- Officer Gangaware called a probation officer and secured the release of Ms. King to Ms. Beyers
- Officer Gangaware removed the handcuffs

Ms. Beyers and Ms. King state the following:

- Ms. Beyers was not bleeding when she exited the SUV and had only a scratch on her wrist/arm
- Ms. King was nearby when Officer Gangaware went to speak to her
- Ms. Beyers never got back into the SUV
- Ms. King ran back to the empty SUV
- Ms. King locked herself in the SUV
- Ms. King did not assault Ms. Beyers while Officer Gangaware was present
- Officer Gangaware pulled her right arm behind the SUV seat
- Officer Gangaware threw Ms. King to the ground as he pulled her out of the SUV
- Officer Gangaware fell on top of Ms. King as she lay on the snow-covered ground
- Ms. King and Ms. Beyers are not sure if Officer Gangaware slipped and fell on top of Ms. King
- Ms. Beyers told Officer Gangaware to call for an ambulance

All parties agree that approximately a week after this incident occurred, Ms. Beyers and Ms. King went to the Office of Chief Mills and apologized for this incident. They further agree that approximately two weeks after this incident, Ms. Beyers and Ms. King went to the office of East Stroudsburg North's principal and apologized for this incident. During these apologies Ms. King also apologized to Officer Gangaware.

As a result of Ms. King's actions, on December 8th, 2016, she was charged with simple assault and resisting arrest. Ms. King accepted a consent decree from Juvenile court for these charges. Under the terms of that decree Ms. King was placed on 6 months' probation and required to perform 10 hours of community service.

## Opinions

#1.

Officer Gangaware was in accord with generally accepted practices and procedures for professional law enforcement officers when he responded to a call of a domestic in a SUV on school grounds.

Professional law enforcement officers assigned to school security have a very special and unique set of duties. Their training and experience teaches them that criminal actions on school grounds, while school is in session have the potential for tragic outcomes.

In this matter the criminal activity was reported to be part of a domestic violence situation. Professional law enforcement officer training and experience teaches them that domestic violence situations have the potential to be extremely dangerous for the participants, the police and persons in the vicinity.

It is my opinion that the combination of these two elements made it necessary for Officer Gangaware to respond to this call in the expeditious manner he did.

#2.

Officer Gangaware was in accord with generally accepted practices and procedures for professional law enforcement officers when he attempted to speak to both parties who were involved in the domestic violence situation.

Professional law enforcement officers' training and experience teaches them that when possible they should attempt to separate the parties involved in the domestic violence situation and speak to them separately.

This is done so that the parties have a chance to cool down and each party has a chance to explain what has and/or is occurring. It also allows the officer to begin his/her investigation into the incident. The officer can observe the demeanor of the parties. The officer can observe the physical stature of the parties. The officer can observe what if any injuries have been inflicted

8

on either of the parties involved. It allows the officer to initiate a plan of action to address the domestic violence situation.

In this case all parties agree that Ms. King and Ms. Beyers were physically separated when Officer Gangaware arrived on the scene. They agree that Officer Gangaware attempted to address both parties separately. They agree that Officer Gangaware spoke to Ms. Beyers first. They agree that Officer Gangaware then attempted to speak to Ms. King. They agree that Ms. King ran away from Officer Gangaware and locked herself in the SUV.

It is my opinion that Officer Gangaware attempted to handle this situation in the way a professional law enforcement officers training and experience would teach him to handle a domestic.

#3.

Based solely on the totality of the circumstances known to Officer Gangaware at the time Ms. King locked herself in the SUV, and whether or not another assault occurred in the SUV in plain view of Officer Gangaware, he had the prerequisite probable cause to place Ms. King under arrest for simple assault.

Professional law enforcement officers training and experience teaches them that domestic violence is an especially serious crime. In the Commonwealth of Pennsylvania, the special and serious nature of domestic violence crimes has been recognized by the legislature and signed into law by the Governor.

Law enforcement officers in the Commonwealth are sight officers. They can only arrest for misdemeanor crimes that are not committed in their presence. The crime of simple assault is a misdemeanor. For the majority of simple assaults not committed in their presence, law enforcement officers in the Commonwealth of Pennsylvania are required to obtain an arrest warrant.

Law enforcement professionals had long recognized that persons committing domestic violence simple assaults have used this facet of the law to avoid facing the consequences of their

9

criminal actions. This facet of the law created a dangerous situation for the victims of these assaults, the citizenry and the officers investigating these crimes.

In order to address this dangerous situation, the Pennsylvania Legislature and most, if not all legislatures throughout the United States have crafted special laws and/or exemptions to laws. In the Commonwealth of Pennsylvania an exception for simple assaults committed during a domestic violence situation has been created. Law enforcement officers who become aware of facts indicating that a person has been the victim of a simple assault in a domestic situation are permitted to and encouraged to arrest the perpetrator.

Professional law enforcement officers in the Commonwealth of Pennsylvania are trained to understand that in order to make an arrest for simple assault in a domestic violence situation there must be some sort of familial or domestic relationship. The assailant must be related by blood, domesticity or relationship to the victim. The victim must show signs of physical assault, no matter how minor, and/ or the scene must show signs of a physical altercation, and/or the victim must state that an assault has occurred.

In this case before Ms. King fled from Officer Gangaware he had been told by Ms. Beyers that she had been assaulted. In addition, Officer Gangaware observed physical injuries to Ms. Beyers.

In addition, a professional law enforcement officers training and experience teaches them that flight and/or attempted flight is an indicator of guilt.

It is my opinion that a professional law enforcement officer faced with the totality of the circumstances known to Officer Gangaware at the time Ms. locked herself in the SUV would have known that he/she would have been encouraged to physically arrest Ms. King.

10

#4.

Officer Gangaware would have been in accord with generally accepted practices and procedures for professional law enforcement officers if he attempted to stop and/or arrest Ms. King for the ongoing assault he states he witnessed in the SUV.

A professional law enforcement officers training and experience teaches them that it is their duty to intervene in and physically stop assaults like the one Officer Gangaware states was occurring in the SUV.

It is my opinion that if Officer Gangaware saw this assault and did not attempt to intervene he would have been derelict in his duties.

#5.

Officer Gangaware was in accord with generally accepted practice and procedures for professional law enforcement officers when he entered the back seat of the SUV and grabbed Ms. King's right hand/arm.

Professional law enforcement officers training and experience teaches them that the use of force continuum is a helpful guide line in deciding when to use force and what level of force is appropriate for a given situation.

Officer presence is the first level of force addressed in the use of force continuum. It is widely accepted that the mere presence of an identifiable and/or uniformed law enforcement officer can have the effect of causing a cessation of criminal activity. In this case all parties agree that Ms. King reacted to Officer Gangaware's presence by running away and locking herself in the SUV.

The next level of force on the continuum is verbal commands. In this matter all parties agree that Officer Gangaware attempted to use verbal commands that indicated that Ms. King was under arrest. The officer states he told Ms. King she was under arrest. Ms. King and Ms. Beyers state that he told her she was going to jail. In the overwhelming majority of cases where

an arrest is required police presence and a few verbal instructions are all that is needed to complete an arrest.

In this matter it is uncontested that in response to Officer Gangaware's presence and these commands Ms. King failed to submit to arrest.

It is my opinion that at that point, whether or not an additional assault was occurring in the SUV, a professional law enforcement officers training and experience would teach them that they would be justified in using a hold or grab of the perpetrators arm in an attempt to take a person, who was failing to comply with an arrest, into custody.

In this case all parties agree that Officer Gangaware grabbed Ms. King by the arm while informing her she was under arrest and/or going to jail.

If the assault was occurring in the SUV as Officer Gangaware alleges it would have been his duty to physically intervene and take steps to stop it. Taking hold of Ms. King's right arm and either holding in or pulling it behind the seat would have been a physical intervention designed to stop the assault.

#6.

Officer Gangaware was in accord with generally accepted practices and procedures for professional law enforcement officers when he attempted to physically remove Ms. King from the SUV and place her under arrest.

All parties agree that after being told by Officer Gangaware that she was being taken into police custody, Ms. King was using her left hand to hold onto the steering wheel to resist being removed from the vehicle and placed under arrest.

The guidelines established by the use of force continuum allow an officer to use the amount of force necessary to make the arrest and overcome the resistance being offered. In this case that resistance was Ms. King holding on to the steering wheel while Ms. King was being informed she was being taken into custody.

Ms. King states that at some point she let go of the steering wheel while Officer Gangaware was attempting to pull her out of the SUV. It would be consistent with the statements of Ms. King, Ms. Beyers and Officer Gangaware that both Ms. King and Officer Gangaware would have fallen to the ground under these circumstances, which all parties agree were occurring at the time. This would be especially true in this case because the ground was slippery due to being covered with snow.

#7.

The training and supervision of Officer Gangaware by the ESASDPD was in accord with generally accepted practices and procedures for professional law enforcement agencies in the Commonwealth of Pennsylvania.

All police officers in the Commonwealth of Pennsylvania must be certified by the Municipal Police Officers Education and Training Commission (M.P.O.E.T.C.) In Pennsylvania the M.P.O.E.T.C. is designated by law to establish and maintain the requirements necessary to become and remain a police officer in the Commonwealth of Pennsylvania. The Commission is comprised of elected officials, District Attorneys, law enforcement professionals on the local, state and federal levels and private citizens.

In order to receive certification every police officer in Pennsylvania must successfully complete a course of study at an M.P.O.E.T.C. recognized Police Academy or an equivalent course of study in a state program given outside of Pennsylvania recognized by the M.P.O.E.T.C. Persons coming from out of state academies must pass a written examination testing their knowledge of the laws of the Commonwealth of Pennsylvania. Officer Gangaware had attended a police academy in the State of Florida and been employed as a police officer there before relocating to Pennsylvania. The State of Florida's training requirements for police officer meet those required in Pennsylvania.

In order to maintain this certification every police officer, regardless of rank or assignment, must attend and pass annual training sessions given under the auspices of the

M.P.O.E.T.C. This annual training is a combination of hands on and classroom in-service education. All facets of the Basic and annual training are tested and participants must obtain a passing grade to obtain and maintain their certification. The training requirements for certification and re-certification of police officers in Pennsylvania are one of the most stringent in the United States.

In this case the training and testing given to Officer Gangaware under the auspices of the ESASDPD exceeded those requirements.

<u>Additional Opinions</u>

Ms. King has acknowledged that she was acting like a two-year-old at the time of this incident. While it is true that she was acting like a two-year-old she was in fact a large young woman (5 foot and 7 inches tall weighing approximately 230 lbs.). She was less than 2 weeks shy of her 17th birthday. Ms. King knew that her actions had caused the police to be called by her mother. Ms. King knew that she had struck her mother and she knew that her mother had informed the police that she needed help. She knew that her mother had told the police that her daughter was beating her up.

Ms. King recognized Officer Gangaware as school police officer She heard him tell her she was being taken into custody. She felt him trying to physically take her into custody. She made the decision to resist Officer Gangaware's efforts to arrest her. It was her decisions and actions that made it necessary for Officer Gangaware to use the force necessary to place her under arrest.

It is an unfortunate fact of police work that, when the actions of a person like Ms. King make it necessary for an officer to use force to overcome resistance to a lawful arrest, there can be unintended consequences and someone can get hurt.

It is further my opinion that Officer Gangaware's progression through the use of force continuum that ended with Officer Gangaware pulling Ms. King out of the SUV was in accord with

generally accepted practices and procedures for professional law enforcement officers under circumstances like those that Ms. King caused on December 8th, 2016.

All of the opinions I have offered in this report are to a reasonable degree of professional certainty. Those opinions are based on the data listed in the Materials and Documents Reviewed section of this report. In forming these opinions, I have also relied on the knowledge and experience that I have accumulated in more than 50 years as a police officer, police supervisor and police trainer. In addition, I have utilized my education and training in the field of law enforcement and from the world of academia to guide me in the formation of these opinions.


/s/ Joseph J. Stine

Joseph J. Stine August 3, 2018

15

CURRICULUM VITAE
JOSEPH J. STINE

754 S. Settlers Circle
Warrington, PA 18976
Phone 215.491.0527 Cell 215.350.5170

1.  Professional Experience:

| | | |
|---|---|---|
| 1999-Present | Founder President | JJS Consulting Associates Incorporated |
| 2004-2006 | Content Area Specialist | Temple University Criminal Justice Training Programs |
| 1990-2003 | Education and Training Committee | International Association of Chiefs of Police |
| 1990-2000 | Chief of Police | New Britain Township Police |
| 1988-1990 | Inspector | Executive Officer, Philadelphia Police Training Bureau |
| 1986-1988 | Captain | C O, Recruit Training Phila. Police Academy |
| 1984-1986 | Captain | C O, 12th Police District |
| 1982-1984 | Captain | C O, 5th Police District |
| 1981-1982 | Captain | C O, Detective Night Command |
| 1977-1981 | Lieutenant | Shift Commander, Patrol District |
| 1972-1977 | Sergeant | Platoon Leader, Patrol District |
| 1970-1972 | Detective | Homicide Division |
| 1968-1970 | Detective | Northwest Detective Division |
| 1966-1968 | Police Officer | 7th Patrol District |

1

**CURRICULUM VITAE**
**JOSEPH J. STINE**

2. Teaching:

| | |
|---|---|
| 1988-Present | Commonwealth of Pennsylvania Mandatory in Service Training Instructor & Basic Training Instructor |
| 1992- Present | Temple University Law Enforcement Training Consultant |
| 2003- 2005 | Pennsylvania Liquor Control Board Training Instructor for police |
| 2001 | Southeast Pennsylvania Transportation Authority Police Department Course Development and Presenter |
| 1993-2000 | Delaware Valley College, Adjunct Faculty Criminal Justice Curriculum |
| 1988-1997 | Philadelphia Police Academy Basic Training Instructor |
| 1986- 1992 | Philadelphia Community College, Adjunct Faculty Criminal Justice Curriculum |
| 1987- 1990 | Philadelphia Police Academy, School Director |
| 1986-1994 | Holy Family College Adjunct Faculty Criminal Justice Curriculum |

3. Organizations:

| | | |
|---|---|---|
| 1965-Present | Member | Fraternal Order of Police |
| 1980-Present | Member | Southeast Pennsylvania Chiefs Association |
| 1986-Present | Member | Delaware Valley Association of Professional Police Officials |

CURRICULUM VITAE
JOSEPH J. STINE

| 1986-Present | Member | Federal Bureau of Investigation National Academy Associates |
| 1986- Present | Life Member | International Association of Chiefs of Police |
| 1988-2002 | Member | Pennsylvania Chiefs of Police |
| 1990-2002 | Member | Bucks County Chiefs of Police |
| 1996- 2000 | Charter Member | Bucks County Commission On Human Relations |

4.  Education:

| St. Joseph's University | MS, Administration Of Criminal Justice |
| Temple University | BA, Social Science Summa cum Laude |
| Philadelphia Community College | A.A.S., Criminal Justice Magna Cum Laude |
| Police Executive Research Forum | 1988 Completed Senior Management Institute |
| Federal Bureau of Investigation | 1986 Completed National Academy |

CASE CAPTION: King, et.al. v. Gangaware, et.al.

CASE NUMBER 3:17-cv-01764-MEM

MIDDLE DISTRICT OF PENNSYLVANIA

JUDGE: The Honorable Malachy E. Mannion

LIST OF EXHIBITS

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|-----|-----|-------------------------------|------------|----------|--------|------------------|
|  | 1 | Audio recordings as produced by the Monroe County Control Center on two discs identified as CD #1 and CD #2 | | | | |
|  | 2 | Monroe County Control Center Report of Incident 160119821, Call Type P40E Domestic w/ EMS dated 12/08/2016 | | | | |
|  | 3 | East Stroudsburg School District Police Department Complaint/Incident Report regarding incident of 12/08/2016 | | | | |
|  | 4 | Written Allegations and Affidavit of Probable Cause, Allegation #119821 prepared by Officer Adam Gangaware and dated 12/08/2016 | | | | |
|  | 5 | East Stroudsburg School District Use of Force General Order dated 10/19/2019 and authored by Chief of Police Frederick Mill | | | | |
|  | 6 | Aerial photograph of campus of East Stroudsburg High School North | | | | |
|  | 7 | Three photographs of area where incident occurred | | | | |
|  | 8 | Officer Adam Gangaware's training records relative to TACT (Therapeutic Aggression Control Techniques) | | | | |
|  | 9 | Student Demographic Sheet Re: Plaintiff, Destiny King | | | | |
|  | 10 | Pike County District Attorney's Notice of Pre-Adjudication Conference for Destiny King relative to 12/08/2016 incident | | | | |

LIST OF EXHIBITS

CASE CAPTION: King, et.al. v. Gangaware, et.al.

CASE NUMBER 3:17-cv-01764-MEM

MIDDLE DISTRICT OF PENNSYLVANIA

JUDGE: The Honorable Malachy E. Mannion

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| | 11 | Google Map of 279 Timberwolf Drive | | | | |
| | 12 | Google Map of 279 Timberwolf Drive as edited by Officer Gangaware | | | | |
| | 13 | East Stroudsburg School District Policies, Nos. 103, 103/104 (attachment), 103.1, 104, 218, 219, 235, 247, 249, 440, 516, 517 | | | | |
| | 14 | East Stroudsburg School District Code of Conduct 2016-2017 | | | | |
| | 15 | Miscellaneous Training Certificates awarded to Officer Gangaware for completion of on-line municipal police officers' education and training commission courses | | | | |
| | 16 | Therapeutic Aggression Control Techniques (TACT) training records for Officer Adam Gangaware | | | | |
| | 17 | East Stroudsburg Area School District Police Department Personnel File for Officer Adam Gangaware | | | | |
| | 18 | Plaintiffs' Interrogatories to Defendant, East Stroudsburg School District | | | | |
| | 19 | Answers and Objections of East Stroudsburg School District to Plaintiffs' Interrogatories | | | | |
| | 20 | Plaintiffs' Interrogatories to Defendant, Adam Gangaware | | | | |

CASE CAPTION: King, et.al. v. Gangaware, et.al.

MIDDLE DISTRICT OF PENNSYLVANIA

LIST OF EXHIBITS

CASE NUMBER 3:17-cv-01764-MEM

JUDGE: The Honorable Malachy E. Mannion

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| | 21 | Answers and Objections of Defendant, Adam Gangaware to Plaintiffs' Interrogatories | | | | |
| | 22 | Defendants' Interrogatories Set 1 to Plaintiff, Meredith Beyers | | | | |
| | 23 | Answers of Plaintiff, Meredith Beyers, to Defendants' Interrogatories Set 1 | | | | |
| | 24 | Defendants' Interrogatories Set 1 to Plaintiff, Destiny King | | | | |
| | 25 | Answers of Plaintiff, Destiny King, to Defendants' Interrogatories Set 1 | | | | |
| | 26 | Defendants' Request for Production of Documents to Plaintiffs, Meredith Beyers and Destiny King, Set 1 | | | | |
| | 27 | Responses of Plaintiffs, Meredith Beyers and Destiny King, to Defendants' Request for Production of Documents Set 1 | | | | |
| | 28 | Plaintiffs' Request for Production of Documents to Defendant, East Stroudsburg School District | | | | |
| | 29 | Responses and Objections of Defendant, East Stroudsburg School District, to Plaintiffs' Request for Production of Documents | | | | |
| | 30 | Plaintiffs' Request for Production of Documents to Defendant, Adam Gangaware | | | | |

CASE CAPTION: King, et.al. v. Gangaware, et.al.

MIDDLE DISTRICT OF PENNSYLVANIA

LIST OF EXHIBITS

CASE NUMBER 3:17-cv-01764-MEM

JUDGE: The Honorable Malachy E. Mannion

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| | 31 | Responses and Objections of Defendant, Adam Gangaware, to Plaintiffs' Request for Production of Documents | | | | |
| | 32 | Disposition Documents | | | | |
| | 33 | Plaintiffs' Complaint | | | | |
| | 34 | Transcript of Deposition of Officer Adam Gangaware including Exhibits thereto | | | | |
| | 35 | Transcript of Deposition of Victor Malvagno | | | | |
| | 36 | Transcript of Deposition of Officer Richard Fehnte | | | | |
| | 37 | Transcript of Deposition of Dr. William Riker, Superintendent of East Stroudsburg School District | | | | |
| | 38 | Transcript of Deposition of Chief of Police Frederick Mill including Exhibits thereto | | | | |
| | 39 | Transcript of Deposition of Destiny King including Exhibits thereto | | | | |
| | 40 | Transcript of Deposition of Meredith Beyers including Exhibits thereto | | | | |
| | 41 | Records of Outpatient Assessment of Children's Service Center of Wyoming Valley | | | | |

CASE CAPTION: King, et.al. v. Gangaware, et.al.

CASE NUMBER 3:17-cv-01764-MEM

MIDDLE DISTRICT OF PENNSYLVANIA

JUDGE: The Honorable Malachy E. Mannion

## LIST OF EXHIBITS

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|-----|-----|-------------------------------|------------|----------|--------|------------------|
|  | 42 | Records of Pocono Medical Center Imaging Services |  |  |  |  |
|  | 43 | Records of Dr. Stefan Sinco/LVPG PMC Orthopaedic Surgery |  |  |  |  |
|  | 44 | Records of Pocono Medical Center/Coordinated Health |  |  |  |  |
|  | 45 | Records of Coordinated Health |  |  |  |  |
|  | 46 | Records of Outpatient Assessment of Children's Service Center of Wyoming Valley |  |  |  |  |
|  | 47 | Records of Children's Service Center of Wyoming Valley |  |  |  |  |
|  | 48 | Student file of Plaintiff, Destiny King |  |  |  |  |
|  | 49 | Curriculum Vitae of Peter A. Feinstein, M.D. |  |  |  |  |
|  | 50 | Independent Medical Evaluation Report of Peter A. Feinstein, M.D., dated August 1, 2018 |  |  |  |  |
|  | 51 | Supplemental Report of Peter A. Feinstein, M.D., dated April 7, 2020 |  |  |  |  |
|  | 52 | Transcript and Video of Deposition for use at Trial of Peter A. Feinstein |  |  |  |  |

## LIST OF EXHIBITS

CASE CAPTION: King, et.al. v. Gangaware, et.al.

MIDDLE DISTRICT OF PENNSYLVANIA

CASE NUMBER 3:17-cv-01764-MEM

JUDGE: The Honorable Malachy E. Mannion

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|-----|-----|------------------------------|------------|----------|--------|------------------|
|     | 53  | Curriculum Vitae of Joseph J. Stine | | | | |
|     | 54  | Liability Report of Joseph J. Stine dated August 3, 2018 | | | | |
|     |     |                              |            |          |        |                  |
|     |     |                              |            |          |        |                  |
|     |     |                              |            |          |        |                  |
|     |     |                              |            |          |        |                  |
|     |     |                              |            |          |        |                  |
|     |     |                              |            |          |        |                  |
|     |     |                              |            |          |        |                  |
|     |     |                              |            |          |        |                  |
|     |     |                              |            |          |        |                  |
|     |     |                              |            |          |        |                  |

***Defendants reserve the right to utilize any and all exhibits identified in Plaintiffs' List of Exhibits.***
***Defendants reserve the right to supplement this List of Exhibits prior to the time of Trial.***